Robert William SEGELKE

v.

Rita Mae SEGELKE.

Court of Appeals of Tennessee,
Eastern Section.

.

Dec. 12, 1978.
Certiorari Denied by Supreme Court
May 7, 1979.

Scott F. May, Watson, Cox, Arnoult & May, Memphis, for appellant.

Barbara White Sims, Phillips, Cash & Levitt, Chattanooga, for appellee.

## OPINION

SANDERS, Judge.

The dominant issue on this appeal is jurisdiction of a petition to change custody of minor children.

The Petitioner-Appellee, Rita Mae Segelke (Sliger), and Respondent-Appellant, Robert William Segelke, were divorced in the Circuit Court of Hamilton County in 1974. The Appellant was granted the divorce and awarded custody of their two minor children, subject to reasonable visitation privileges of the Appellee. Immediately after the divorce the Appellant moved his residence to Houston, Texas, where he has lived with the children up to this time.

During the summers of 1975 and 1976 the children visited with the Appellee at her home in Hamilton County, Tennessee. In July, 1977, the children returned to Hamilton County for their summer visit with the Appellee. Immediately after the arrival of the children in Hamilton County the Appellee filed a petition in the Circuit Court of Hamilton County for a modification of the original divorce decree to change custody of the children from the Appellant to her. The petition alleges there has been a material change in circumstances since the entry of the original decree and it is manifestly to the best interest of the children that their custody be changed from the Appellant to the Appellee. The petition says:

"The material change of circumstances which have occurred since the entry of the aforesaid decree and which give rise to the filing of this complaint for modification are as follows:

"1. Plaintiff has remarried since the entry of the aforesaid decree, and she can provide the minor children with a suitable home;

"2. Respondent has not remarried since the entry of the aforesaid decree; however, he has been living with a young girl, and such circumstance does not provide a suitable environment for these minor children;

"3. Although respondent was granted custody of the minor children under the aforesaid 1974 decree and although respondent has resided in Houston, Texas, with the children since the entry of said decree, plaintiff has maintained continued love, interest, concern and contact with her children. That she has visited with the children as often as possible considering the distances involved; That she has had the children for a period of time both this summer and last summer;

"4. In addition, because of her love and concern for her children, plaintiff went to Houston, Texas, in February 1976 and attempted a reconciliation with the respondent; however, after a month, respondent informed plaintiff that his girl friend was returning from California where she had been for the period of time of attempted reconciliation and he demanded that plaintiff leave;

"5. That not only is respondent subjecting said children to an immoral environ-

ment, the nineteen year old girl friend with whom respondent resides is extremely cruel and physically abusive toward the minor children. On one occasion respondent's girl friend bloodied the nose and bruised the eye of the eight year old child and on another occasion she hit the eight year old child so hard that she left blue and bruised marks on her body;

"6. In addition, this nineteen year old girl friend who resides with respondent uses illegal drugs, to-wit: marijuana, and the eight year old minor child involved is aware of this use and possession of the same. That the said in-resident girl friend has been arrested for the illegal possession of marijuana and driving a vehicle while under the influence of drugs;

"7. That the minor children involved are aware that respondent and his nineteen year old girl friend sleep together without the benefit of marriage. That this nineteen year old girl friend of respondent has become pregnant by the respondent on at least two occasions and has had abortions to terminate these pregnancies;

"8. That the minor children involved are unhappy living under the conditions and circumstances described above and it is detrimental to their welfare for them to continue to reside with respondent under these conditions and circumstances."

In addition to praying for a change in custody of the children, the petition asked for a temporary restraining order enjoining the Appellant from removing the children from the physical custody of the Appellee and the jurisdiction of the Court. The restraining order was issued as prayed and a copy of it, along with a copy of the petition, was sent to the Appellant at his residence in Texas.

The Appellant was directed to appear and show cause by August 22, 1977, why the custody of the children should not be changed.

On August 17 the Appellant, in defiance of the injunction, came to Hamilton County, abducted the children and returned them to Texas. He did not appear on August 22 in response to the show cause order. A complaint for contempt was filed and the Court issued an attachment for him on August 23. A default judgment was entered against the Appellant September 6 on the petition to modify the original decree. The case was heard on September 16 and the Court entered an order changing the custody of the children from the Appellant to the Appellee.

The order recites the Appellee had regained custody of the children and they were physically in Hamilton County on the day of the hearing. The order further recites: "That the evidence substantiates and the Court finds to be true allegations 1, 2, 3, 4, 5, 6, 7 and 8 contained in the complaint for modification, which set forth specifically the detailed change of circumstances."

The Court also held it was to the manifest best interest of the children that the decree be modified.

On September 29 the Appellant filed a motion to dismiss the complaint for modification and injunctive relief. He made a special appearance through counsel urging upon the Court: (1) The court lacked jurisdiction over the subject matter, over the person of the appellant and the two minor children. (2) The process served on appellant was insufficient. (3) The complaint fails to state a cause of action upon which relief can be granted. He also filed a motion to vacate the (a) temporary restraining order, (b) order to show cause, (c) default judgment and (d) order of attachment for contempt.

The Court overruled the motions and, in doing so, said: "The Court is of the opinion that the aforesaid motions of Robert William Segelke should be denied because the said Robert William Segelke is in contempt of this Court for wilfully violating the temporary restraining order heretofore issued and he has not purged himself or sought to purge himself of said contempt; therefore, he should not be heard to complain before this Court at this time. The Court is of the opinion that the merits of the matters raised by the aforesaid motions should not be reached at this time because of the con-

tempt status of the said Robert William Segelke and the Court specifically declines to rule on the merits of the motions until the said Robert William Segelke purges himself of the contempt or seeks to purge himself of the contempt in these proceedings."

The Appellant has appealed from the order of the Court and assigned error. The Appellant says the action of the Court was error because: (1) The Court did not have jurisdiction of the subject matter or the appellant or the minor children. (2) The temporary restraining order should not have been issued because Appellee alleged no immediate and irreparable harm, loss or damage as required by T.R.C.P. 65.03(1). (3) He should not be held in contempt because the restraining order was not served as provided in Rule 65.03(4) and Rule 4.04, T.R.C.P. (4) The Court erred in denying relief because Appellant was in contempt.

■ We need to first address the question of whether or not the Court was justified in holding the Appellant in contempt. It is a well-settled rule in this jurisdiction that unless an injunction is void it must be obeyed until set aside by the court. In the case of *Aladdin Industries, Inc. v. Associated Transport, Inc.*, 45 Tenn.App. 329, 323 S.W.2d 222 (1958), in addressing the question of the obligation to obey an injunction, the court said, 323 S.W.2d at page 228: "Such an injunction, however erroneous, must be obeyed until set aside by the court granting it or by an appellate court." In the same case the court held that before an injunction can be disregarded it must be "void," not voidable. The failure of the pleadings to conform with Rule 65.03(1), T.R.C.P., did not make the injunction void. The Appellant was, accordingly, not at liberty to disregard it. As for the service of the injunction, the Appellant does not contend he had no knowledge of the existence of the restraining order. Rule 65.03(5), T.R. C.P., provides a restraining order becomes effective and binding upon a party at the time of service *or when he is informed of the order*, whichever is earlier.

■ We, therefore, hold it was not error for the Court to find Appellant in contempt.

Having found Appellant in contempt, was it error for the Court to deny him relief until he purged himself of contempt? We think not in most cases.

"He who seeks Equity must do Equity, and he who has done inequity shall not have Equity. Therefore, it is a general rule that a party who is in contempt will not be heard by the Court, when he wishes to make a motion or ask a favor; . . . . His first duty is to purge his contempt, and the only steps he can take are to apply to the Court (1) to set aside the proceedings against him because they are irregular, and (2) to be discharged on the ground that he has purged himself of his contempt, by doing the act for the non-performance of which the contempt was incurred, and confessing judgment for the costs occasioned by his contumacy." Gibson's Suits in Chancery, 5th ed., Vol. 2, § 970, p. 195.

Also see *Bradshaw v. Bradshaw*, 23 Tenn. App. 359, 133 S.W.2d 617.

■ Although the court, as a general proposition, is justified in denying relief to a party who is in contempt, an exception is made where the welfare of children is at stake. The case of *Williams v. Williams*, 196 Tenn. 9, 263 S.W.2d 531 (1953), involved an application by a father to change the custody of their minor son. The petition alleged the child was grossly mistreated by the mother and her present husband. The mother defended on the grounds the father was behind in his alimony and in contempt. The trial court dismissed the petition on this ground. The Supreme Court reversed, saying:

"Now, in the present case, to repel the plaintiff without a hearing might jeopardize or interfere with the welfare of the minor child. Although the plaintiff, father, still is in contempt of court for non payment of alimony, yet we think that the paramount consideration is the welfare of the infant. See *Smith v. Smith*, 188 Tenn. 430, 220 S.W.2d 627, et seq., where it was again stated by this Court

that the welfare of the infant child is uppermost in the mind of the Court.

On oral argument before this court, in the case at bar, it was conceded by the Appellee that a hearing on the merits of the issue of change in custody would be appropriate. We, therefore, remand the case on this issue alone.

■ This brings us to the insistence of the Appellant that the Court of Hamilton County is without jurisdiction to adjudicate this issue. He says that since his domicile, and that of the children, is in the State of Texas, jurisdiction to adjudicate this issue lies in the State of Texas, and we agree. However, we hasten to add we do not hold this jurisdiction to be exclusive.

We think the case of *Coury v. State*, 213 Tenn. 454, 374 S.W.2d 397 (1964) and *Hines v. Hines*, 220 Tenn. 437, 418 S.W.2d 253 (1965) are controlling. In the *Hines* case the parties were divorced in Knox County. The mother was awarded custody of the children. She moved with the children to Cincinnati, Ohio. The father subsequently filed a petition in the domestic relations court of Knox County seeking a change in custody. The mother filed a demurrer challenging the jurisdiction of Tennessee. The trial court overruled the demurrer and the Supreme Court reversed. The Court quoted from *Coury v. State*, *supra*, as follows:

"All of the authorities agree that the courts of the state in which the children and the parent to whom legal custody has been awarded are domiciled have jurisdiction to determine the manifest best interest of such children. 213 Tenn. at 464, 374 S.W.2d at 401."

The Court also said:

"It must be remembered that the petition filed herein for change of custody alleges that the mother is

" ' * * * presently making her home in Cincinnati, Ohio * * * and that the children, Gwendolyn and Wilma Jean, have been making their home with their said mother.' "

\*   \*   \*   \*   \*   \*

"Under these circumstances we think that the Courts of Ohio, in which state the children and the parent to whom legal custody has been awarded are domiciled, have jurisdiction to determine the manifest best interest of such children. The manifest best interest of children changes with changed conditions and if the father, in this case, can prove to the courts in Ohio that conditions have changed in such a manner that the interest of the children will be better served by changing custody, then that court, under all of the authorities, has jurisdiction to make this determination.

The problem always in custodial cases of this type is for the trying court to determine the best interest of the children, and, of course, the court where the children are living is in a much better position to make this determination than the courts in Tennessee would be in this case."

■ The principal material, factual matter which distinguishes the *Hines* case from the case at bar is the physical presence of the children in Tennessee. However, we do not think this is controlling. Both the *Hines* case and the *Coury* case turned on the question of the domicile of the children and the parent having their custody. This view is supported by the case of *Kenner v. Kenner*, 139 Tenn. 211, 201 S.W. 779. We hold that jurisdiction as between the Appellee and the Appellant for the adjudication of an application to change the custody of the children is properly in the State of Texas. However, the circumstances in this case require us to do more than dismiss Appellee's petition for change of custody. While it is the duty of our courts to refrain from taking jurisdiction of a matter where that jurisdiction properly lies within a sister-state, we have a greater duty to protect the welfare of minors physically present in our state. The touchstone of all litigation of this nature in this state and all of our sister-states is the welfare of the minor children. In the case of *Ferreira v. Ferreira*, 9 Cal.3d 824, 109 Cal.Rptr. 80, 512 P.2d 304, 307 (1973), the Supreme Court of California, in addressing itself to a similar problem as presented here, said:

"The court of the forum, presented with this situation, finds itself buffeted between the familiar rock of Scylla and the whirlpool of Charybdis. If the court, to protect the best interests of the child, reopens the custody question, it encourages parents to violate existing decrees in order to gain access to a more favorable forum; in effect, the court rewards a form of child stealing. Yet if the court refuses to reopen the question, it risks rendering an order disconsonant with the best interests of the child.

"We have neither been able to find a perfect answer to the dilemma nor to invent a solution of our own. We can do no better than submit a realistic resolution: the court of the forum should ordinarily refuse to reopen the question of the custody of a child whose custody is vested under an existing decree in a nonresident parent. If faced with charges supported by competent proof, as distinguished from conclusory assertions by the party seeking modification of an existing decree, that the return of the child to the nonresident parent will jeopardize or seriously endanger the child's health or safety, however, the court should inquire into these charges and make whatever temporary custody order it finds necessary to protect the child. But even in cases in which the court grants temporary custody to the resident parent, it should not ordinarily resolve the merits of the controversy as to permanent custody; it may, on motion of the nonresident or on its own motion, stay those proceedings to await the determination of that matter by the court of the nonresident parent's domicile.

\*   \*   \*   \*   \*   \*

"The distinction between a dismissal and a stay does not merely lie in terminology. The staying court *retains jurisdiction* over the parties and the cause; it can render, enforce, and modify orders for temporary custody of the children; it can compel the foreign parent to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedings if the foreign action is unreasonably delayed or fails to reach a resolution on the merits. (Cf. *Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 746, fn. 4, 59 Cal.Rptr. 101, 427 P.2d 765.) In short, the staying court can protect the welfare of the children and the interests of the California resident pending the final decision of the foreign court."

In the case at bar we have serious charges by the Appellee in her petition of undesirable conditions in the home of the Appellant. We also have a finding by the Circuit Judge that these charges are supported by the evidence and they are true. He further found the welfare of the children required their custody be changed to the Appellee. Absent a bill of exceptions, the appellate court will conclusively presume the findings of the trial court are correct. *Wilson v. Hafley*, 189 Tenn. 598, 226 S.W.2d 308; *Kyritsis v. Vieron*, 53 Tenn.App. 336, 382 S.W.2d 553. We therefore conclude the welfare of the minor children requires they remain under the protection of the courts of this state until the case can be determined on its merits.

The default judgment relating to custody of the children is set aside and vacated.

The case is remanded for a hearing on the question of temporary custody and the entry of a decree in keeping with this opinion. The existing decree will be modified to conform with this opinion and will remain in force and effect until further determination by the Circuit Court and/or the Texas court. The order of the Trial Court is, in all other respects, affirmed.

The cost of this appeal is taxed one-half to the Appellee and one-half to the Appellant.

GODDARD and FRANKS, JJ., concur.