# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 7, 2000 Session

## STATE OF TENNESSEE EX REL. DEBBIE D. WHITFIELD v. MICHAEL R. HONEYCUTT

### Appeal from the Circuit Court for Robertson County
#### No. DR-8349    Carol Catalano, Judge

---

### No. M1999-00914-COA-R3-CV - Filed February 16, 2001

---

Appellant, who was married to the mother at the time of the child's birth, responded to a petition for contempt regarding past due child support with a request to determine paternity of the child. A paternity test is irrelevant in this case because even proof that he is not the child's father would not be a defense to contempt for failure to comply with a valid court order. We affirm the trial court's denial of the request.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Michael R. Honeycutt.

Paul G. Summers, Attorney General and Reporter, Stuart Wilson-Patton, Assistant Attorney General, for appellee, State of Tennessee ex rel. Debbie D. Whitfield.

## OPINION

Michael R. Honeycutt appeals the trial court's refusal to order a paternity test of the child of his marriage to Debbie D. Whitfield. Ms. Whitfield was pregnant when the parties married in April 1991. The child, who bears Mr. Honeycutt's first and last names, was born January 17, 1992. Mr. Honeycutt was served with the complaint for divorce, which named him as the child's father, about three weeks after the child's birth. The court set *pendente lite* child support of $50.00 per week on June 19, 1992 and Ms. Whitfield was granted a default judgment on September 22, 1992, presumably for the child support arrearage. The hearing for the divorce was held on November 18, 1992. Ms. Whitfield was granted a divorce and child support was set.

On June 22, 1996, Mr. Honeycutt was served a Petition for Contempt for failure to pay child support. He was represented by an attorney at the hearing and did not question the child's paternity. Ms. Whitfield obtained a judgment for the arrearage, $13,490, in August, 1996.

On July 21, 1998, the State, on behalf of Ms. Whitfield, filed a petition for an increase in child support, based on Mr. Honeycutt's increased salary. On December 28, 1999, a petition for criminal contempt was filed, alleging that Mr. Honeycutt's child support debt was $15,440 and that he had willfully failed to comply with the court's order to pay. Mr. Honeycutt's answer to the petition for contempt, filed in January 1999, seven years after the child's birth, was his first assertion that he might not be the boy's father. Mr. Honeycutt sought a parentage test,[1] hoping to prove he was not the father of the child, thus relieving him of the child support obligation.

On April 22, 1999, the court entered an order increasing Mr. Honeycutt's child support obligation to $91.38 per week and ordering him to pay an additional $25.00 per week on the arrearage. The court also sentenced Mr. Honeycutt to ten days in jail for the contempt, but suspended the sentence "upon the condition that [he] complies with this Order." In a subsequent order, entered July 1, 1999, the court denied the motion for parentage testing, relying on the doctrines of equitable estoppel, judicial estoppel, collateral estoppel, and *res judicata*. Mr. Honeycutt appeals only the denial of the motion for parentage testing.

We begin our analysis by noting that the boy is presumed to be Mr. Honeycutt's child because he was born during the marriage of Mr. Honeycutt and Ms. Whitfield. *See* Tenn. Code Ann. §36-2-304(a)(1) (Supp. 2000). Further, the child bears Mr. Honeycutt's first and last names, and the mother's complaint for divorce named him as the father. The issue of Mr. Honeycutt's child support payments had been before the trial court on at least four occasions prior to the proceeding at issue, with no suggestion that Mr. Honeycutt might not be the father of the child. Mr. Honeycutt has introduced no evidence, not even his own affidavit, which might hint that the child is not his.

Mr. Honeycutt now seeks to rebut the presumption of paternity by obtaining a parentage test, which he hopes will show that he is not the biological father of the child. Because the case from which the request originated was not a contested paternity case, we shall apply Tenn. Code Ann. § 24-7-112(a)(2), which states:

> During any . . . civil or criminal proceeding [other than a contested paternity case] in which the question of parentage arises, upon the motion of either party or on the court's own motion, **the court shall at such time as it deems equitable** order all necessary parties to submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage.

---

[1] No motion for a parentage test appears in the record although Mr. Honeycutt submitted a "Memorandum of Law in Support of Motion for Parentage Testing." The trial court treated Mr. Honeycutt's request for a parentage test as if a motion had been filed and we shall analyze the matter as if it had. *See Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977) (this court endeavors to give effect to the substance rather than the form and terminology of the filings).

Tenn. Code Ann. § 24-7-112(a)(2) (2000) (emphasis added). Although the statute contains the mandatory "shall," it also has the discretionary language "at such time as it deems equitable." *Id.* We read the statute as allowing the trial court the discretion to apply equitable principles and determine whether to permit the parentage test. *See Gatlin v. Gatlin*, No. 02A01-9710-CH-00267, 1998 WL 408797 at *2 (Tenn. Ct. App. July 22, 1998) (no Tenn. R. App. P. 11 application filed); *State of Tennessee ex rel. Duck v. Williams*, Nos. 02A01-9604-JV-00084 and 18-0155, 1997 WL 675459 at *3 (Tenn. Ct. App. Oct. 29, 1997) (no Tenn. R. App. P. 11 application filed). We review this case for an abuse of that discretion.

The request for a parentage test arose as an "affirmative defense" to the petition for contempt of court for the willful failure to pay child support. In other words, Mr. Honeycutt sought to escape the consequences of failure to comply with valid court orders. Our Supreme Court has discussed contempt of court, stating:

> [T]he inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts. Indeed, at common law, the power of courts to punish contempts was vast and undefined. Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct punishable by contempt.
>
> Conduct punishable as contempt in Tennessee now is delineated in Tenn. Code Ann. § 29-9-102 (1980 Repl.) which provides:
>
> > The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases: . . .
> >
> > (3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts. . .
>
> Contempts may be either criminal or civil in nature. . . . Criminal contempts . . . are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused."

*Black v. Blount*, 938 S.W.2d 394, 397-98 (Tenn. 1996) (citations omitted).

It is well settled that parties must comply with the order of a court unless or until that order is modified or set aside. *See Vermillion v. Vermillion*, 892 S.W.2d 829, 833 (Tenn. Ct. App. 1994)

(citing *Nashville Corp. v. United Steelworkers of America*, 215 S.W.2d 818, 820 (Tenn. 1948); *Segelke v. Segelke*, 584 S.W.2d 211, 214 (Tenn. Ct. App. 1978)). Failure to comply can result in a finding of contempt. *See Segelke*, 584 S.W.2d at 214. The existence of grounds for modification of an order is not available as a defense to proceedings for contempt for failure to comply with the order. *See Bradshaw v. Bradshaw*, 133 S.W.2d 617, 619 (Tenn. Ct. App. 1939).

> Where a divorced [spouse] neglects to apply for a modification of the divorce decree, in spite of the fact that sufficient grounds exist to warrant modification, the mere existence of such grounds with respect to payments due under the decree is not available as a defense to proceedings for contempt for violating the decree.

17 AM. JUR. 2d *Contempt* § 145 (1990). The same rule applies to the proceedings before this court.

Mr. Honeycutt attempted to defend against the petition for contempt with his assertion that the child might not be his. Such a defense is not available in a contempt proceeding. *See id.; see also Bradshaw*, 133 S.W.2d at 619. Even actual proof of non-paternity would not be a defense to the order to pay amounts already due. Therefore, the paternity test is irrelevant to the contempt petition.

Mr. Honeycutt refers us to cases from this court in which men have obtained relief from child support obligations after showing proof that they were not the biological fathers. We note that each of those cases arose from Tenn. R. Civ. P. 60.02 motions, requesting prospective relief from the child support orders. *See White v. Armstrong,* No. 01A01-9712-JV-00735, 1999 WL 33085 at *5 (Tenn. Ct. App. Jan. 27, 1999) (no Tenn. R. App. P. 11 application filed); *Johnson v. Johnson*, No. 02A01-9605-JV-00123, 1997 WL 271787 at *3 (Tenn. Ct. App. Jan. 7, 1997) (no Tenn. R. App. P. 11 application filed); *Tennessee Dep't of Human Servs. v. Johnson*, Shelby Juv., 1986 WL 1873 at *3 (Tenn. Ct. App. Feb. 11, 1986) (no Tenn. R. App. P. 11 application filed)*.* Such is not the case before us. Mr. Honeycutt attempted to raise his possible non-paternity of the child as a defense to contempt of court for past due child support, which he clearly cannot do.[2]

The trial court did not abuse its discretion by denying Mr. Honeycutt's request for a parentage test because whether he is the biological father is irrelevant to whether he complied with the trial court's order that he pay child support. This cause is remanded for such further proceedings as may be necessary. Costs are taxed to the appellant.

_____

PATRICIA J. COTTRELL, JUDGE

---

[2]This court expresses no opinion regarding Mr. Honeycutt's ability to obtain prospective relief from the child support award through a properly pled and supported Tenn. R. Civ. P. 60.02 motion. We also express no opinion regarding Mr. Honeycutt's prerogative to obtain testing privately without a court order.