IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2005 Session

# MARIA ANGELA STEFANELLI BELL v. JULIAN BAKER BELL, III.

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 01D2105      Hon. Jackie Schulten, Circuit Judge**

---

## No. E2004-02964-COA-R3-CV - FILED OCTOBER 31, 2005

The divorced mother was permitted by the Trial Court to relocate with her two children to Cincinnati, Ohio from Hamilton County, Tennessee. The father has appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

John P. Konvalinka, Chattanooga, Tennessee, for appellant.

William H. Horton, Chattanooga, Tennessee, for appellee.

**OPINION**

In this action, the parties were divorced by Final Decree on July 12, 2002, which incorporated by reference the parties' Marital Dissolution Agreement, as well as a Permanent Parenting Plan. The Permanent Parenting Plan provided that the mother is the primary residential custodian, and the father will have co-parenting time with the children every other weekend from Friday after school until Monday morning, and every Wednesday from the time they leave school until 7:30 p.m.

On July 29, 2004, the father filed a Petition which averred that the mother had recently announced to the children that she was moving with them to Cincinnati, Ohio before the 2004-2005 school year, and the mother had failed to comply with the requirements of the parental relocation statute, Tenn. Code Ann. §36-6-108. In addition to objecting to the move, the father asked

the Court to modify the Permanent Parenting Plan to reflect that the parties were spending substantially equal time with the children, and asked the Court to issue a TRO enjoining the mother from relocating.

The Court issued a Temporary Restraining Order on July 29, 2004, enjoining the mother from relocating until there was compliance with the relocation statute and the father had been given a right to be heard regarding the same in accordance with Tenn. Code Ann. §36-6-101. The Court further granted the father authority to register the children at Baylor and Nolan Elementary schools in Hamilton County, Tennessee. The mother then filed a Motion to Dissolve Temporary Restraining Order, asserting that she had sent father a letter by certified mail on July 1, 2004, advising him of her intent to move in accordance with the parental relocation statute. She further asserted that she had sold her house, registered the children in school in Cincinnati, and hired a moving company to move their belongings. In response, the father asserted the mother had not complied with the statute because she had not given the requisite 60 days' notice, and had not informed the father of his right to oppose the move. The mother's Motion to Dissolve the TRO was denied by Court Order on August 10, 2004.

The mother then sent another letter to the father on August 9, 2004, advising of her intent to move and his right to file a petition in opposition to her proposed move. She further moved to dissolve the TRO, to which the father pled in opposition.

The Court conducted a hearing on November 11 and 22, 2004, wherein the mother testified that she had met the father when they were both living in Cincinnati, and they had married there, and later moved to Chattanooga in 1992. She testified that after they divorced, she told the father that she would try to stay in Chattanooga, but she might want to move back to Cincinnati. She testified the father told her if she would try it for a few years, he would not object to her moving if she later decided to go. She testified she did not work during the marriage, but obtained a job with AstraZeneca just prior to the divorce. She testified that her job was in pharmaceutical sales, and it became increasingly more demanding and stressful, and that she mentioned about moving back to Cincinnati to father in April 2004, because her job was "killing" her, but he objected to her taking the children.

The mother testified that her mother, father, brother, and sister all live in Cincinnati, and she knew they would help her with the children, and she also wanted to get the children into Catholic school there, and had enrolled them in a school called Guardian Angels. She testified that her brother was a builder, and owned a lot where he could build her a house, and she testified that she had already sold her house in Chattanooga and moved most of her belongings to Cincinnati before she was served with the father's petition and restraining order. She stated that she and the children were living in a furnished apartment in Chattanooga pending trial.

The mother testified that she had applied for and obtained a job with Ventiv Health, a pharmaceutical company, which was a contract company, so the job demands would not be as great as her prior employment. She testified that the job provided a raise in pay, but that she had missed

the starting date waiting on the trial, but she could reapply for the job. She testified that Ventiv also provided health insurance.

She testified that the father had the children on Wednesday nights and every other weekend, and then they shared the summer, and that sometimes when the father had the children, they spent the night with the father's parents, and that she had kept a calendar concerning the children after the divorce, and her calendar was entered as an exhibit. The mother calculated she had the children 58% of the time, and the father 34% of the time, and that others had them 8% of the time.

The mother presented information about the Guardian Angels school in Cincinnati, and that neither child had serious medical problems that would interfere with their moving. Further, that both children did well at school, although Baker had struggled at times, which she attributed to the divorce.

On cross-examination, the mother admitted that she had a problem with lateness and with the children being tardy, and that she had taken the children to Dr. Sizemore because she needed help with discipline for Baker, and also because she found out from Ms. Muller's deposition that the father had told her many untrue things about the mother, in what the mother believed was an attempt to get Muller to testify against the mother.

Other witnesses testified, including the father, who testified that he was executive director of the Home Builders Association of Southern Tennessee, and he was also a licensed attorney, but did not practice. He testified that he lived near his parents on Signal Mountain, and he had two brothers and their families who lived in Hixson, a part of Chattanooga. He testified that the mother had mentioned moving on several occasions, usually expressed as the desire to get away from Chattanooga because she was displeased with him in some way. He further testified that over a period of 12 months he had the children 43.9 percent of the time, and the mother had them 56 percent of the time, and his calculation were introduced as Exhibits.

The father testified that his father had offered the mother money to stay in Chattanooga, but did not know why she refused. The Court heard from the children in chambers, and Baker testified that he did not want to move away from Chattanooga and his friends, although he liked Cincinnati. Riley stated that she would be happy either way.

On December 8, 2004, the Court entered a Memorandum Opinion, finding the mother had allowed the father to spend every Wednesday with the children as opposed to alternating Wednesdays, and that the father contended he had spent substantially equal time with the children, which the mother denied. The Court stated the mother had a good job in Chattanooga, but it required her to work up to 70 hours per week, which the mother claimed interfered with her ability to care for her children. The Court found that in May 2004, the mother lost her job and put her house on the market.

The court found the grandfather paid a full year's tuition for the parties' son Baker

to attend Baylor for the 2004-2005 school year, and that the mother had sold her house in August and had to move. The Court further found that while both parties' calendars contained errors, the mother's calendar was more reliable because it covered a longer period of time, had more specific information, and was made contemporaneously with the days in question.

The court found that both parties had strong support systems in their families, and that the children had spent a lot of time with the paternal grandparents in Chattanooga, and that the mother's family in Cincinnati was also close, and that her family had offered to help her with housing, a job, and to assist her in taking care of the children. The Court found that the mother had offered good reasons for the relocation, that her brother was going to build her a house, that she had enrolled the children in private school there, and that had obtained a good job with a drug company (which she lost when she was unable to move in August).

The Court concluded that the mother "gave Chattanooga her best shot, post-divorce, staying here for two years". The Court found the mother should be allowed to relocate because her relocation served a reasonable purpose, it would not pose a threat of specific and serious harm to the children, and the move was not vindictive. The Court thus held that the mother would be allowed to relocate with the children during the winter Christmas break if she had regained the job she lost or secured another position of "equally advantageous benefits and salary." The Court specifically stated the mother would not be allowed to move until she secured such a position. The Court further held that the parenting plan should be modified so that the father would have five weeks in the summer with the children, and that the parties would alternate the children's school breaks/holidays.

At that juncture, the father filed a Notice of Appeal the following day, and a Motion for Stay of Judgment Pending Appeal. The mother then filed a Motion to Alter or Amend, asking the Court to increase child support commensurate with the income level father testified he had at trial, and requiring the father to pay for air fare for the children for visitation, or meet the mother halfway for exchanges. The mother also filed a Motion for Restraining Order, asking the Court to enjoin father, his counsel and family from contacting any of her prospective employers.

On January 4, 2005, the mother filed a Motion for Emergency Hearing, asking the Court to schedule a hearing the following day regarding two job offers she had in Cincinnati, to allow her to move immediately so the children could start school there. She filed the deposition of David Rossman, vice-president of engineering at Clean Air Concepts, who testified the mother had been offered a job in sales with that company. She also filed the deposition of Daren Paul Murrer, who testified that he was president of Granite Earth, LLC, and that his company had offered the mother a position. Both men testified regarding the salary/benefits of the jobs.

The Court entered an Order on February 15, 2005, denying the father's motion to stay the judgment, and finding that the job with Clean Air Concepts was a job of equally advantageous benefits and salary as the job she lost, such that the mother would be allowed to move with the children to Cincinnati and take that job. The Court ordered the parties to attempt to agree as to a revised parenting plan, and stated if they could not, each should submit a proposed plan and the

Court would make a determination. Plans were filed, and the Court entered an Order on April 4, 2005, implementing a new parenting plan which allows father to have the children every other weekend from Friday after school until Sunday at 6:30 p.m., plus alternate school breaks/holidays, and half of the summer. The father was also ordered to pay for airfare costs if he chooses to visit with the children in Chattanooga.

Numerous issues are presented for review:

1.  Whether the court erred in considering mother's post-trial motions after father filed his Notice of Appeal on December 9, 2004?

2.  Whether the court erred in denying father's request for a full evidentiary hearing regarding whether mother had satisfied the relocation criteria?

3.  Whether the court erred in granting mother's January 5, 2005 relocation motion?

4.  Whether the court erred in implementing a parenting plan which modified several provisions of the original plan when those provisions were not appropriately before the court for review?

5.  Whether the court erred in finding that a reasonable purpose existed for the relocation?

6.  Whether the court erred in failing to address the issues raised in father's July 29, 2004 petition to modify the original parenting plan?

7.  Whether the court erred in finding mother's calendar to be more credible?

8.  Whether the court erred in not considering whether relocation was in the children's best interests?

9.  Whether the court erred in finding that the relocation was not vindictive?

10. Whether the court erred in finding that the relocation would not pose a threat of specific and serious harm to the children?

11. Whether mother should be granted an award of attorney's fees for the trial/appeal?

First, the father argues the Trial Court erred in considering the post-trial motions filed by the mother since the father had already filed a Notice of Appeal, which he argues removed jurisdiction from the Trial Court and vests jurisdiction in this Court. The mother asserts that the

Memorandum Opinion from which the Notice of Appeal was given, was not a final judgment, as her move was still conditional.

The Court's Memorandum Opinion was not a final order. Moreover, it was not incorporated into a judgment or an order as it typically done, and left open issues to be resolved. *See Moon v. Webb*, 584 S.W.2d 803 (Tenn. Ct. App. 1979); *Palmer v. Palmer*, 562 S.W.2d 833 (Tenn. Ct. App. 1977); Tenn. R. Civ. P. 54. The Notice of Appeal was prematurely filed, and would not be viable until the Court's final judgment was entered. Tenn. R. App. P. 4.

The father argues the Court committed error in denying his request for a full evidentiary hearing before finally granting the relocation petition in February 2005. He bases his position on Tenn. Code Ann. §36-6-108 and *Placencia v. Placencia*, 48 S.W.3d 732 (Tenn. Ct. App. 2000). Both require the court to hold a hearing to determine if the statutory requirements have been met. In this case, the Trial Court had already held a hearing and determined that the requirements were met, but simply made the move contingent upon the mother finding an "equally advantageous" job to the offer she had and lost. This afforded the father with a full evidentiary hearing as required, and the father admits in his brief that, even after the hearing, the new prospective employers were deposed and the mother was also deposed on the remaining issue. The father was given the opportunity to file any materials he wanted the Court to consider before the Court made its final decision. This issue is without merit.

On January 5, 2005, the mother filed a motion with the Court, seeking a determination that she had indeed secured an equivalent job. The father contends that it was error for the Trial Court to grant this motion, because the mother had already in fact, moved to Cincinnati in violation of the Court's previous order. As authority for this proposition, the father relies on *Segelke v. Segelke*, 584 S.W.2d 211 (Tenn. Ct. App. 1978), which held that a court is justified in denying relief to a party who is in contempt of court. The record does not disclose that the father ever filed a petition asking the Court to find the mother in contempt, and no such findings were ever made. The father's argument on this issue is without merit.

The father argues that the Trial Court erred in making modifications to the parties' original parenting plan when the provisions the Court modified were not appropriately before the Court for review. Specifically, the father argues that the Trial Court erred in giving the mother the major decision-making responsibility for the children, rather than this being a joint responsibility. *Citing, Mitchell v. Mitchell*, 2003 WL 21051742 (Tenn. Ct. App. May 12, 2003), wherein this Court discussed the proper procedure for modifying a parenting plan pursuant to the statute, and stated, "If the parties do not reach agreement, the court is to establish the permanent parenting plan."

In this case, both parties asked for the parenting plan to be modified, and after allowing the mother to relocate, the Court ordered the parties to attempt an agreement to revise the parenting plan, and stated if they could not do so, they should each submit a proposed plan and the court would make a final determination. After the proposed plans were filed, the Court entered its Order implementing a new parenting plan. While the father argues this plan materially modified the

major decision making responsibilities, a review of both plans shows that the only real modification was that the mother is now allowed to make decisions regarding education (elementary and high school only), but provides that the father can have input regarding education if he agrees to pay or the Court orders him to pay any part of the education expenses. Also the mother was given the ability to determine extracurricular activities, but the father has the power to determine such activities that occur during his summer visitation period. These are the only changes between the two plans.

The Court is empowered to change the previous plan when a relocation occurs. *See* Tenn. Code Ann. §36-6-108(b). The modified plan is appropriate to the new circumstances of the parties, and does not significantly alter the original plan such that the father is harmed by the changes. The modified plan further safeguards the father's time with the children, and only changed what was necessary to fit the practicalities of the new living arrangements of the children. We find no error in the Court's implementing the new plan.

The father argues the Trial Court erred in finding the mother's proposed relocation had a reasonable purpose, because she did not have any concrete job offers in Cincinnati at the time of trial, and because a parent's wish to be closer to his or her family without proof of enhanced employment opportunities has been deemed insufficient reason to relocate in prior decisions of this Court. Father relies on *Dunkin v. Dunkin*, 2003 WL 22238950 (Tenn. Ct. App. Sept. 30, 2003) and *O'Bannon v. O'Bannon*, 2003 WL 22734673 (Tenn. Ct. App. Nov. 20, 2003). In these cases, the parent wishing to relocate asserted that the purpose of relocation was to be nearer to her family, but offered no valid proof of any additional purpose, such as a good job offer or career advancement. *Id.*[1]

The father's argument ignores the fact that the mother had a concrete job offer of a good job, which she lost due to the fact that she had to wait until the hearing and the Court's approval before she could relocate.[2] Once the mother established she had an equally advantageous position[3], the Court's condition had been met. The evidence does not preponderate against the Trial

---

[1] It should also be noted that the moves in these cases were particularly troublesome because they were from Tennessee to Montana and South Dakota, respectively, and thus the distance alone would have created major problems with the visitation schedule.

[2] Father attempts to argue that this offer was not adequately proven at trial, because the written offer was ruled to be inadmissible hearsay, but mother was allowed to testify regarding the job, and she testified that she would have less pressure, better hours, benefits, and more pay.

[3] Father also attempts to argue that the court erred in finding that the Ceiling Pro job was equally advantageous, because father considers the job to be "suspect" due to the fact that Mr. Rossman knows mother's father and hired mother without requiring her to go through the normal hiring process. The issue regarding whether this job was equally advantageous, however, is a question of fact which the trial court found in the affirmative, and the evidence does not

Court's finding that a reasonable purpose existed for the relocation. In this connection, *see Collins v. Coode*, 2004 WL 904097 (Tenn. Ct. App. Apr. 27, 2004); *Caudill v. Foley*, 21 S.W.3d 203 (Tenn. Ct. App. 1999); *Price v. Bright*, 2005 WL 166955 (Tenn. Ct. App. Jan. 26, 2005).

The father contends that it was error for the Trial Court not to address his request that the parties' original parenting plan be modified, because he raised serious concerns regarding the mother's ability to get the children to school on time,[4] and father was, in actuality, spending more time with the children than the original parenting plan allowed, such that he was spending substantially equal time with the children.

The father correctly points out that, when determining whether a parent is spending substantially equal time with the children for the purposes of Tenn. Code Ann. §36-6-108, the court must look at the time the parent actually spends with the children, and not just the time provided in the parenting plan. *Collins*, at 3; Tenn. Code Ann. §36-6-108(c), (d).

Both parties presented calendars to the Court regarding their time with the children, and the Trial Court found the mother's exhibit and testimony to be more reliable than the father's testimony. The Trial Court is the first and best judge of the credibility of the witnesses, and the Court's findings of credibility are given great weight by this Court. *Whitaker v. Whitaker*, 957 S.W.2d 834 (Tenn. Ct. App. 1997). The evidence does not preponderate against the Trial Court's finding on this issue. Tenn. R. App. P. 13(d).

Since the Trial Court found that the children were not spending substantially equal time with each parent, the Court then is required to determine whether relocation serves a reasonable purpose.

The Court found the mother's motive for relocation was not vindictive, and the evidence does not preponderate against this finding. The father also argues that the move will cause significant and serious harm to the children, because he feels the children will have serious problems adapting to the move. The Court received testimony from the children on this issue, and Riley stated that she would be fine either way, and while Baker testified he would miss Chattanooga and his friends, he admitted that he liked Cincinnati. The statute lists the factors which the Court should consider in determining whether specific and serious harm will occur, including when the child has serious medical or educational needs which cannot be met in the new area. Tenn. Code Ann. § 36-6-

---

preponderate against that finding.

[4]While father spent time trying to establish this as a substantial problem at trial, the court did not seem to give it much consideration, and there was a significant dispute regarding the reasons proffered for same, i.e. mother testified that she was sometimes late with the children after picking them up from her ex-mother-in-law, who did not have them ready on time. The court apparently found this problem to be relatively insignificant, as there was no proof that the lateness impacted the children's grades or schoolwork.

108. There was no proof presented at trial regarding any of these factors, as the Trial Court noted. We conclude, the Court correctly found the mother should be allowed to relocate pursuant to the statute.

The mother argues the Trial Court should have awarded her attorney's fees in this case, and that the Court should award fees on appeal because the appeal is frivolous. The mother has not demonstrated in the record that she made a claim for fees in the Trial Court, and thus, cannot demonstrate that it was error for the Trial Court to fail to award fees when none was requested. *See* Tenn. R. App. P. 36.

While a party can be held liable for damages for a frivolous appeal pursuant to Tenn. Code Ann. §27-1-122, we have explained that "an appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). We conclude the appeal does not appear to be so devoid of merit that such sanctions are warranted.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Julian Baker Bell, III.

_____
HERSCHEL PICKENS FRANKS, P.J.