# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 1, 2002 Session

## JEFFREY EARL EDMISTEN v. KATHY HAMILTON EDMISTEN

**Appeal from the Chancery Court for Williamson County**
**No. II-25154    Chancellor, Russ Heldman**

---

### No. M2001-00081-COA-R3-CV - Filed May 13, 2003

---

Wife sought separate maintenance and support. After a two year separation during the pendency of Wife's petition, Husband sought a divorce on the statutory ground of the separation. Wife opposed the divorce. The trial court dismissed Husband's counter-complaint, awarded Wife a legal separation, divided the marital property, and awarded alimony *in futuro* to Wife. Husband appeals, challenging not only the trial court's decision not to award a divorce, but also the division of marital property and award of alimony to Wife. We affirm in part, reverse in part, and modify the trial court's order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed in Part, Reversed in Part, Modified and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Penny Harrington, Nashville, Tennessee, for the appellant, Jeffrey Earl Edmisten.

Robert Todd Jackson, Nashville, Tennessee, for the appellee, Kathy Hamilton Edmisten.

### OPINION

Kathy Hamilton Edmisten ("Wife") filed a complaint for separate support and maintenance on December 23, 1997, against Jeffrey Earl Edmisten ("Husband") in which she sought alimony *pendente lite* and permanent alimony, division of the marital property, continuation of her health insurance, and continuation of her status as beneficiary on Husband's life insurance. Wife alleged in her complaint that Husband committed inappropriate marital conduct and adultery.

Husband and Wife married in December of 1992 and ceased living together in late 1997. At the time of the trial Wife was 45 years old and Husband was 56.

Although the parties had no children during the marriage, Husband and Wife attempted in-vitro fertilization several times, beginning in 1994. After their last attempt in 1995, the marriage began to deteriorate. Although the parties disagree on precipitating events, it is clear that Wife's discovery of Husband's infidelities was a significant factor. According to Wife, she contracted several sexually transmitted diseases during the marriage and, when she confronted Husband about her conditions,[1] he admitted to being unfaithful to her with three different women. The parties attempted marriage counseling, but that was not successful and Husband stopped attending his individual sessions.

Wife's dissatisfaction with Husband's misconduct and the condition of the marriage culminated with the filing of her complaint for support and separate maintenance. Husband filed an answer and counter-complaint for absolute divorce in which he denied adultery and stated that reconciliation was not possible. Husband sought a divorce on the grounds of irreconcilable differences, admitted that the marital property and debt should be equitably divided, and agreed that Wife was entitled to *pendente lite* support but denied her right to permanent support or to exclusive occupancy of the marital residence. Wife's answer to Husband's counter-complaint raised justification or provocation as an affirmative defense to irreconcilable differences pursuant to Tenn. Code Ann. § 36-4-120.

Almost two years after her complaint was filed, Wife filed a motion to set *pendente lite* support. She admitted that Husband had paid her voluntary spousal support in the amount of $1,500 per month since the separation in addition to her automobile expenses in the amount of $555 per month and car insurance in the amount of $150 per month since the separation, but that he had not made those payments in September of 1999.

The parties entered an agreed order on November 15, 1999, in which Husband agreed to pay *pendente lite* support to Wife in the amount of $1,900 per month, the payments on Wife's Infiniti vehicle, and the insurance premiums related to all of the vehicles utilized by Wife. Husband also agreed to maintain Wife as a secondary insured on his health insurance.

Husband was allowed to amend his counter-complaint to allege as grounds for absolute divorce the fact that the parties had been continuously separated for two years and that there were no minor children of the marriage. Wife answered the amended counter-complaint by admitting the two year separation and again alleging justification as an affirmative defense. She opposed a divorce.[2]

---

[1]Husband testified that he had herpes simplex II prior to the marriage and that Wife knew about that condition. He also testified he had never been diagnosed with two of the STDs Wife testified she had, primarily as an explanation of why he did not tell her about them.

[2]Her response to Husband's motion to amend stated, "The Wife would submit that although Husband is seeking 'the easy way out' of the divorce by a continuous separation for two years, that she, at this juncture, still objects to a divorce being granted to the Husband for reasons which he is well aware of and will be fully disclosed to the Court at

(continued...)

Prior to the final hearing on the complaint and counter-complaint, each party submitted a proposed division of marital assets in which they listed property as either marital or separate and suggested to the court the proper division of the marital property. They also submitted statements of expenses and income.

The trial court conducted a hearing but took the matter under advisement, due to the complexity of the issues involved and to the fact that one of the subpoenaed witnesses failed to appear. The trial court later found that witness, a former lover of Husband, in contempt of court. The trial court allowed the parties to examine and cross-examine her at a later hearing.

The trial court entered an order on December 1, 2000, in which the court ruled that due to the "unclean hands" of Husband "the Defendant's [Husband's] amended 'counter-complaint for absolute divorce' must be and is dismissed with prejudice." Wife's complaint for separate maintenance was treated by the court as a complaint for legal separation under Tenn. Code Ann. § 36-4-102 and was granted. The court divided marital property, awarded alimony *in futuro* to Wife in the amount of $2,333.00 per month, ordered Husband to maintain Wife on his health insurance policy, ordered Husband to maintain life insurance for Wife's benefit in the amount of $250,000, and awarded alimony *in solido* to Wife in the amount of $11,000 for attorney's fees and private investigator fees.

Specifically, the trial court based its decision to dismiss Husband's counter-complaint with prejudice on *Continental Bankers Life Ins. Co. v. Simmons*, 561 S.W.2d 460, 465 (Tenn. Ct. App. 1977), stating:

> The principle [of unclean hands] is general, and is one of the maxims of the court that he who comes into a Court of Equity asking its interposition in his behalf must come with clean hands; and if it appear from the case made by him, or by his adversary, that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.
>
> Defendant [Husband], by his testimony and as a result of his pleadings, has "unclean hands." His conduct bears "an immediate relation to the subject-matter of the suit." *Durr v. Buerger*, 1999 WL 807701 (Tenn. Ct. App. 1999), at p.2. Therefore, Defendant's amended "counter complaint for absolute divorce" must be and is hereby dismissed with prejudice. Plaintiff's complaint for separate support and maintenance, which the court deems to be a complaint for legal separation under Tenn. Code Ann. 36-4-102 or which must be treated as one, is sustained by the evidence and is hereby granted.

---

[2](...continued)
the final hearing of this cause."

Neither party has asked the Court to award her/him an absolute divorce on the ground of inappropriate marital conduct; however, upon consideration of all the evidence and the lack of credibility of Defendant, the Court finds that Defendant has committed what the law in the state of Tennessee defines as inappropriate marital conduct and his inappropriate marital conduct above was the cause or fault which caused the separation of the parties. Plaintiff, who was a very credible witness and most certainly an excellent wife, should not suffer as a victim of Defendant's misconduct to the extent that Tennessee law may be applied in her favor or come to her aid. Accordingly, Plaintiff is granted a legal separation from Defendant to be governed by T.C.A. § 36-4-102, and because of his unclean hands, Defendant shall not be permitted to seek a divorce from Plaintiff for any reason he may advance based upon any prior alleged conduct of Plaintiff.

The trial court's order concluded with a lengthy footnote that discussed the trial court's wide discretion in granting a divorce based upon the language in Tenn. Code Ann. § 36-4-129.

Husband appeals, taking issue with the trial court's failure to declare the parties divorced as well as the trial court's division of property and award of alimony and attorney's fees without making specific findings of fact.

## I. Husband's Ground for Divorce

On appeal, Husband argues that the trial court inappropriately admitted evidence regarding the Husband's adultery and inappropriate marital conduct after he filed an amended complaint for divorce alleging a two year separation as grounds and Wife admitted those grounds in her answer. Husband avers that the improperly admitted evidence led to the trial court's refusal to grant him a divorce based upon the separation and its reliance on the "unclean hands" of Husband as a means to that end.

This litigation began in December of 1997 when Wife filed a complaint seeking separate support and maintenance; she did not request a divorce. Before the court ruled on her complaint, Husband amended his pleadings to ask for an absolute divorce on an additional ground.[3] The ground asserted by Husband was that "For a continuous period of two (2) or more years which commenced prior to or after April 18, 1985, both parties have lived in separate residences, have not cohabited as man and wife during such period, and there are no minor children of the parties." Tenn. Code Ann. § 36-4-101(15). Unlike most of the other statutory grounds for divorce, this ground is not based on fault or misconduct. *Thomasson v. Thomasson*, 755 S.W.2d 779, 788 (Tenn. 1988) (Harbison, J. concurring); *Earls v. Earls*, 42 S.W.3d 877, 897-98 (Tenn. Ct. App. 2000) (Cain, J. dissenting); JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW § 6-8-(l) (1997)("This is the only true no-fault ground in Tennessee").

---

[3] Husband's motion to amend was filed December 9, 1999, and the order allowing amendment was filed February 15, 2000.

In her answer, Wife admitted that the parties had continuously lived separate and apart for two years and that they had no minor children. In addition, Wife asserted as an affirmative defense, citing Tenn. Code Ann. § 36-4-120, that Husband's ill conduct was a justifiable cause for any conduct complained of against her.

In Tennessee, grounds and defenses for divorce are purely statutory. *Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977). By its own terms, Tenn. Code Ann. § 36-4-106 makes the defense of provocation by the ill conduct of the other spouse available only where the cause for divorce is inappropriate marital conduct.[4] Even prior to the 1998 amendment of Tenn. Code Ann. § 36-4-120, it had been held that provocation or justification, as set out in that statute, was not a defense to a divorce on the ground of living separately for the statutory period. *Harwell v. Harwell*, 762 S.W.2d 140, 141 (Tenn. Ct. App. 1988). In addition,

> T.C.A. § 36-4-101(12) [now (15)] is unequivocal and, under the statutory scheme as interpreted in *Chastain*, the defense of adultery is not a defense to the granting of a divorce where this ground is established by the evidence.

*Harwell*, 762 S.W.2d at 141. As a non-fault based ground for divorce, the two year separation ground is not subject to fault based defenses. In his dissent in *Thomasson*, Justice Drowota used the 1985 enactment of the ground of continuous non-cohabitation for a specified period (now Tenn. Code Ann. § 36-4-101(15)) as an example of "a significant shift from the earlier policy of the state characterizing divorce as a remedy for the innocent against the guilty. For persons proceeding under these grounds, fault is simply not at issue." 755 S.W.2d at 790.[5]

In her post trial brief, Wife did not rely upon the defense of provocation to Husband's ground of separation for two years. She does not make that argument on appeal, either. Instead, in her post trial brief and in this court, Wife took the position that the trial court had before it two complaints, that the court obviously could not grant both because the relief sought was inconsistent, and that Wife could not be denied her right to relief by Husband's request for divorce.

The trial court deemed Wife's complaint to be one for legal separation under Tenn. Code Ann. § 36-4-102. In her brief, Wife takes the same position, stating that the pleadings clearly show that "she sought Separate Support and Maintenance (or Legal Separation)." She also relies on the

---

[4] *See* 1998 Tenn. Pub. Acts ch. 1059, Sec. 11, which became effective January 1, 1999. The statute previously read that the defense was available for any cause for divorce "specified in § 36-4-102." At the time of the 1998 amendment, the grounds listed in § 36-4-102 (grounds for divorce from bed and board or from the bonds of matrimony) were inappropriate marital conduct, indignities to the person forcing the wife to withdraw, and abandonment. The separation for two years ground was not included.

[5] Consequently, the trial court's findings that Husband was guilty of inappropriate marital conduct and that such conduct was the cause or fault which caused the separation of the parties are simply not relevant to Husband's ground for divorce. The trial court made those findings in the context of holding that Wife had proved grounds for separation and did not apply them as a defense to Husband's counter-complaint for divorce.

provisions of the legal separation statute for part of her argument. The statute authorizing courts to grant an order of legal separation provides, in pertinent part:

> Notwithstanding this section, a party who can establish grounds for divorce from the bonds of matrimony pursuant to § 36-4-101 shall be entitled to an absolute divorce pursuant to the provisions of this chapter.

Tenn. Code Ann. § 36-4-102(d). This provision was added as part of the rewriting of this section by 1998 Tenn. Pub. Acts ch. 1059, which became effective January 1, 1999. Husband was allowed to amend his complaint to add the ground of separation for two years in February of 2000.

Husband established the ground set forth in Tenn. Code Ann. § 36-4-101(15). In a similar situation, this court has found that a spouse who has committed adultery is nonetheless entitled to a divorce, over opposition from the other spouse, upon proof of separation for the required period. *Harwell*, 762 S.W.2d at 141. In that case, we reversed the trial court's decision to deny the divorce and remanded for entry of a divorce decree. *See also Crowell v. Crowell*, No. E1999-00348-COA-R3-CV, 2000 Tenn. App. LEXIS 370, at *29 (Tenn. Ct. App. May 30, 2000) (perm. to appeal denied Mar. 12, 2001) (interpreting *Harwell* as holding that "the wife could not successfully use the defense of adultery to contest the divorce where the husband had proven what was required under the statute allowing divorce for long-term non-cohabitation").

The trial court herein refused to grant Husband the relief he requested and, instead, dismissed his complaint with prejudice on the basis that Husband had "unclean hands."

## II. The Equitable Doctrine of Unclean Hands

The unclean hands doctrine is one of equity, based upon the premise that "He who seeks Equity must do Equity, and he who has done inequity shall not have equity." *Segelke v. Segelke*, 584 S.W.2d 211, 214 (Tenn. Ct. App. 1978).

> The principle is general, and is one of the maxims of the Court that he who comes into a Court of Equity asking its interposition in his behalf must come with clean hands; and if it appear from the case made by him, or by his adversary, that he himself [has] been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the Court.

*Continental Bankers Life Ins. Co.*, 561 S.W.2d at 465.

In *Chastain v. Chastain*, the Tennessee Supreme Court considered whether the plaintiff wife's adultery prevented her from obtaining a divorce because of the doctrine of unclean hands.

The court found, first, that unclean hands was not listed as a statutory defense to an action for divorce, and then held:

> [T]he more recent and better reasoned cases hold that, except for fraud and deceit upon the court, which are always available as defenses in any court, the clean hands principle does not apply in divorce litigation.
>
> A full scale application of the doctrine of unclean hands to divorce litigation would amount to an unwarranted extension by the courts of the doctrine of recrimination to all actions and grounds for divorce, whereas, the legislature has limited the defense of recrimination to actions for divorce which are based upon the adultery of the defendant.

*Chastain*, 559 S.W.2d at 935 (citations omitted). Thus, to the extent Wife relies upon Husband's marital misconduct, including adultery, to support her argument that he is prevented from relief, that argument must fail.

The trial court's order does not identify the conduct by Husband which the court found to constitute unclean hands, only citing Husband's pleadings and testimony. When the trial court has set forth its factual findings in the record, we review those findings *de novo* on the record, and we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). However, where the trial court makes no specific findings of fact, there is nothing in the record to which a presumption of correctness can attach. In that situation, this court will review the record without the presumption of correctness and determine where the preponderance of the evidence lies. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002).

Because marital misconduct cannot be the basis for denial of relief under the doctrine of unclean hands, we will presume that the trial court based its finding on some other conduct, specifically relating to conduct of the litigation. The trial court's reference to Husband's pleadings and testimony implies its agreement with Wife's arguments herein that Husband's misconduct consisted of inaccurate responses in his answer and perjurious testimony at the hearing.

In *Chastain*, the court made clear that fraud and deceit upon the court remained defenses in divorce actions as in other actions. This court has several times addressed the issue of whether perjury constitutes unclean hands so as to deny relief to a party in a divorce case. A lengthy discussion appears in an unreported decision of this court, *Inman v. Inman*, No. 89-82-II, 1989 Tenn. App. LEXIS 674 (Tenn. Ct. App. Oct. 18, 1989), *rev'd on other grounds by Inman v. Inman*, 811 S.W.2d 870 (Tenn. 1991), wherein this court reversed the trial court's grant of a divorce to a husband, awarding the divorce to the wife instead, on the basis that the husband had twice provided untrue sworn answers to interrogatories. This court held that Husband's "compounded perjury" or

"multiple perjury" as to the material allegations of the case barred him from the relief sought in his counter-complaint.

In *Inman*, this court quoted with approval the following language from a federal court decision:

> Although most cases in which the clean hands doctrine has been applied are cases in which the cause of action itself has arisen out of or been the fruit of unconscionable conduct, we do not understand that it is a prerequisite to the application of the doctrine that the cause of action shall have so arisen. *It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subordination of perjury or other like attempt to perpetrate a fraud upon the Court or take an unconscionable advantage of his adversary.* It is said that to have relief from a court of equity plaintiff must not only come into court with clean hands, *but must keep his hands clean.* [emphasis added].

*Id.* at *11-*12 (quoting *Mas v. Coca-Cola Co.*, 163 F.2d 505, 508 (4th Cir. 1947)).

The *Inman* court found that the husband's perjury therein went to the ultimate material issue in the case and that his "repeated perjury attacks the very foundation of our judicial system." *Id.* at *12. The court further found that a litigant who has committed perjury and subsequently "is caught red-handed" should not be allowed relief from the courts in order to protect the integrity of the courts. *Id.* at *13.

Several other cases have considered the doctrine of unclean hands as related to perjury in the context of a divorce without extending the doctrine to encompass the particular set of facts at issue. In *Wilder v. Wilder*, 863 S.W.2d 707 (Tenn. Ct. App. 1992), obviously a reported opinion,[6] this court declined to apply the doctrine of unclean hands to bar the husband from the relief sought. In *Wilder*, Wife sought a divorce from Husband, an attorney, on various grounds including adultery. The trial court awarded the divorce to Husband, and Wife appealed arguing that the trial court erred in failing to impose sanctions against Husband for his admitted perjury. Husband had testified in a deposition that he had not had any adulterous relationships at any time during the marriage up until the date of the deposition. In a later deposition, however, Husband admitted his prior perjury and testified that he had been unfaithful to Wife. On appeal Wife argued that Husband's perjury placed him in a court of equity with unclean hands and that he therefore was not entitled to relief from the court.

Although this court agreed with Wife that Husband's perjury offended the traditional notions of our judicial system and that it should not go unadmonished, we chose not to extend our decision

---

[6]Tenn. Sup. Ct. R. 4 makes reported opinions binding, but unreported opinions merely persuasive.

-8-

in *Inman* to encompass the situation present in *Wilder* due to the factual distinction present between the two cases. "The husband in the instant case [*Wilder*] attempted to alleviate some of the harm caused by his perjury prior to trial and was therefore not caught 'red handed' in the perjury as was the husband in *Inman*." 863 S.W.2d at 713.

In the case before us, it is Husband's response in his sworn answer that Wife relies upon as justifying imposition of the unclean hands doctrine to dismiss Husband's counter-complaint for divorce.[7] In that answer, Husband stated, "Husband denies that he has been guilty of adultery or inappropriate marital conduct and demands strict proof thereof."

In his answers to interrogatories and at trial Husband admitted to adulterous relationships with three women during the marriage. Wife testified that Husband had admitted these relationships to her prior to the marriage counseling and the separation. Like the court in *Wilder*, we do not consider Husband's denial of grounds in his answer to be sufficiently egregious to bar him from seeking relief. In fact, Husband's general denial and demand for proof in his answer is not as egregious as Mr. Wilder's false testimony in a deposition.

Because the doctrine of unclean hands derives from equity, consideration of the entire circumstances, including the potential harm caused by the misconduct, is appropriate. As the cases discussed above make clear, the defense of unclean hands is subject to limitations; it must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint. *Nolen v. Witherspoon*, 182 Tenn. 333, 339, 187 S.W.2d 14, 16 (1945).

In *Wilder*, this court found that any harm arising from the husband's false testimony in his first deposition had been alleviated by his later admission of perjury and of adultery. In the case before us, Wife sought separate maintenance. She essentially enjoyed that relief during the pendency of the litigation since she continued to live, separately, in the marital home, and received support including her car payment and insurance. Therefore, Husband's denial in his original answer did not cause Wife harm. His answers to interrogatories admitting the adultery alleviated any potential harm in the presentation of Wife's case. He was required to pay Wife's attorney's fees and private investigator fees as part of the order herein, thereby relieving any financial harm Wife may have

---

[7]Although Wife makes one reference in her brief to Husband's answers to interrogatories, it does not appear that she relies on those answers as an example of false statements regarding adultery. In her interrogatories, Wife asked Husband if he had engaged in sexual relations (or other specified conduct) with persons other than Wife during their marriage. Husband responded "Yes." In addition, Husband provided, as requested, the names of those persons and the approximate time period during which the relationship took place. Wife attempted to impeach Husband's trial testimony with some of these particulars, but we do not consider the resulting testimony as establishing perjury in the answers to interrogatories. Similarly, Wife argues that some of Husband's trial testimony was perjurious, primarily because it was in some specifics inconsistent with other testimony. The trial court did not make any finding that any of Husband's testimony amounted to perjury. Our review of the entire transcript provides no basis for us to make such a finding either. *See Born v. Born*, 614 S.W.2d 49, 51 (Tenn. Ct. App. 1981) (holding that although the husband argued that the divorce should have been awarded to him because of the wife's falsified allegations in her complaint and false testimony, judicial relief is granted upon the facts found by the trial court and not upon a moral judgment and stating "no authority is cited, and none occurs to this Court, which denies relief to a litigant as a punishment for a false statement").

incurred in seeking to establish proof of the adultery. Since the issue of whether Husband committed adultery was irrelevant to his amended counterclaim for divorce, as explained above, it is difficult to see how his general denial and demand for proof ultimately harmed Wife's case. However, we recognize that fault is one of the factors relevant to a support determination. Wife was not, however, hampered in her ability to obtain evidence of fault through discovery in which Husband admitted the adulterous relationships or in presenting that evidence.

### III. Trial Court's Refusal to Grant Divorce

The trial court and Wife focused upon the discretion of the court under Tenn. Code Ann. §36-4-129. However, we are of the opinion that Tenn. Code Ann. §§ 36-4-119, 36-4-102, and 36-4-101(15) establish the range of discretion applicable in the case before us. Tenn. Code Ann. § 36-4-119 provides that if the court is satisfied that the plaintiff is entitled to relief, it may be granted by annulment or dissolution of the marriage "or by a separation for a limited time." While this statute may grant the trial court the discretion as to the appropriate remedy, *Hutton v. Hutton*, 584 S.W.2d 670, 672 (Tenn. Ct. App. 1979), the limitation on the court's authority regarding an award of separation cannot be disregarded. Such a separation must be "for a limited time."

The legislature's determination that grounds for absolute divorce exist after two years of separation, without an order granting legal separation, Tenn. Code Ann. § 36-4-101(15), provides guidance as to an appropriate "limited time." Similarly, the legislature has determined:

> . . . The court also has the power to grant an absolute divorce to either party where there has been an order of legal separation for more than two (2) years upon a petition being filed by either party which sets forth the original order for legal separation and that the parties have not become reconciled. The court granting the divorce shall make a final and complete adjudication of the support and property rights of the parties. However, nothing in this subsection shall preclude the court from granting an absolute divorce before the two-year period has expired.

Tenn. Code Ann. § 36-4-102(b).[8]

This court has previously determined that the duration of separate maintenance or legal separation is set at two years. *Ford v. Ford*, No. 13, 1989 Tenn. App. LEXIS 372, at *6 (Tenn. Ct. App. May 18, 1989) (no Tenn. R. App. P. 11 application filed). While the court in *Ford* specifically declined to address the question of whether in a proper case a court of equity might grant separate maintenance for a period longer than the statutory two years, it found absolutely no evidence in the record to justify or require a longer period. *Id.*

---

[8]This provision has existed with essentially the same substance since at least 1963. *See* 1963 Tenn. Pub. Acts ch. 283. Amendments in 1998, among other things, changed bed and board divorce to legal separation. The Tennessee Supreme Court has determined that this provision created another or new ground for divorce; that either party could seek divorce using this ground; but that absolute divorce could only be granted to the party obtaining the earlier limited divorce. *Abney v. Abney*, 222 Tenn. 160, 433 S.W.2d 847 (1967).

The trial court herein placed no durational limitation on the separation. It dismissed Husband's complaint with prejudice and also stated, "because of his unclean hands, Defendant shall not be permitted to seek a divorce from Plaintiff for any reason he may advance based upon any prior alleged conduct of Plaintiff."

The idea underlying separate maintenance proceedings is that the marriage should be preserved if there is hope of reconciliation. *See Lingner v. Lingner*, 165 Tenn. 525, 533, 56 S.W.2d 749, 752 (1933). However, should reconciliation efforts not be successful,

> As pointed out by another court, we must take into consideration "the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried." *Burlage v. Burlage*, 65 Mich. 624, 32 N.W. 866, 867. Society is not interested in perpetuating a status out of which no good can come and from which harm may result.

*Id.* 165 Tenn. at 534, 56 S.W.2d at 752.

Building upon this statement from *Lingner*, Justice Henry, writing for the Tennessee Supreme Court in *Farrar v. Farrar*, 553 S.W.2d 741, 744-45 (Tenn. 1977), stated, "We fully recognize that considerations of public policy demand that the institution of marriage be sheltered and safeguarded. But there is an obverse side to the coin of public policy and consideration must be given to the fact that society is ill served by a legally commanded continuance of a marriage which exists in name only."

Consistently with these statements of societal interest, our legislature has created grounds for divorce where: (1) parties with no minor children have lived separately for at least two years; and (2) parties subject to an order of legal separation have failed to reconcile within two years of that order. In fact, our Supreme Court has found that the intent of Tenn. Code Ann. § 36-4-102(b) is to empower courts to grant relief to persons finding themselves in the situation described in *Lingner*. *Abney*, 222 Tenn. at 165, 433 S.W.2d at 849. In *Abney*, the Supreme Court reversed the trial court's dismissal of the husband's petition for divorce based upon a failure of reconciliation after two years under a decree of separate maintenance, where the wife opposed the divorce, except for holding that the statute only authorized the grant of a divorce to the party who obtained the earlier decree.

Herein, despite all of Husband's marital misconduct, Wife testified that she had no desire to get a divorce, and objected to Husband being granted a divorce on the ground of the two year separation of the parties. Wife testified that she should not be forced to agree to a divorce that she does not want.

> In a divorce action the desires of the parties, particularly the party without fault, are given consideration, but such do not control the action of the court.

*Abney*, 222 Tenn. at 167, 433 S.W.2d at 850 (citing *Lingner*, 165 Tenn. at 751, 56 S.W.2d at 529). Accordingly, this court has previously stated that, "We do not believe that when reconcilement

-11-

between the parties is no longer possible either party is entitled to exercise a veto over the question of divorce." *McCray v. McCray*, No. 01-A01-9704-CH-00170, 1997 Tenn. App. LEXIS 909, at *5 (Tenn. Ct. App. Dec. 17, 1997) (rehearing denied Jan. 9, 1998).[9] "While the courts should take the parties' desires into consideration, they must ultimately render a decision called for by the law and the facts." *Earls*, 42 S.W.3d at 884.

> . . . Article 11, Section 4, of the Constitution of Tennessee expressly confers upon the legislature the power to specify by law the causes or grounds for divorce. Whether the courts agree or disagree with the wisdom of their choice is immaterial as it is our duty to give effect to them so long as they remain on the statute books.

*Abney*, 222 Tenn. at 165, 433 S.W.2d at 849.

Pursuant to Tenn. R. App. P. 36, this court may grant the parties the relief to which they are entitled and may enter any order or judgment necessary to provide that relief. *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 608 (Tenn. Ct. App. 1999). In their discretion, appellate courts may enter judgments when they reverse a trial court's judgment and may also remand cases when issues are left to be decided. *First Tenn. Bank Nat'l Ass'n v. Hurd Lock & Mfg. Co.*, 816 S.W.2d 38, 40 (Tenn. Ct. App. 1991). It is the responsibility of appellate courts to render the judgment that the trial court should have rendered. *Perry v. Carter*, 188 Tenn. 409, 411-12, 219 S.W.2d 905, 906 (1949).

Husband proved, and Wife acknowledged, the existence of grounds for divorce in that the parties, with no minor children, had lived separately for more than two years. Tenn. Code Ann. § 36-4-101(15). There exists no statutory defense to this ground, and we have concluded the doctrine of unclean hands is inapplicable under the facts of this case to deprive Husband of his right to relief provided by the legislature. Wife's action for legal separation does not deprive Husband of entitlement to divorce upon proof of grounds. Tenn. Code Ann. § 36-4-102(d). Accordingly, we declare the parties divorced pursuant to Tenn. Code Ann. § 36-4-129 and modify the trial court's judgment accordingly.

---

[9]In *McCray*, the husband sued for divorce, and wife denied he was entitled to divorce and sought a legal separation (then divorce from bed and board). This court affirmed the trial court's dismissal of the husband's complaint and the grant of legal separation to the wife because of the unusual circumstances which existed at the time of trial. Wife had been emotionally devastated by the death of the parties' youngest child and had been in treatment for the effects of that tragic event. The wife was about to start nursing school, and there was testimony from the wife and her doctor that finalizing a divorce at that time would impair her ability to function and decrease the chances of her succeeding in school. This court also noted that the parties had then lived apart for more than three years and that Tenn. Code Ann. § 36-4-102(b) established as a ground for divorce separation under a legal separation (or bed and board divorce) order for more than two years without separation and suggested that if the husband were to file a new petition on that ground, there was no obstacle to an order granting him an absolute divorce. *Id*. at *7-*8.

IV.  Property Division and Spousal Support

Husband also challenges the trial court's division of marital property, alleging the trial court improperly relied on fault, failed to make findings of fact regarding the classification of certain property, and improperly classified the increase in Husband's separate property as marital.  Husband also asserts the trial court erred in awarding alimony *in futuro* to Wife and in awarding her attorney and private investigator fees as alimony *in solido*.

A.  Division of Marital Property

The trial court awarded Wife, as her share of marital property, the equity in the marital home, her 401k plan, her checking account, her Infiniti vehicle and her 1965 Ford truck, as well as affirming the couple's prior division of furniture and furnishings.  The court awarded to Husband various accounts and investments and a 1999 LSH vehicle.  The trial court valued the items awarded to Wife at $164,866 and those awarded to Husband at $131,045.

Tennessee, being a "dual property" state, recognizes two distinct classes of property: "marital property" and "separate property."  *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).  The distinction is important because, in an action for divorce, only marital property is divided between the parties.  Tenn. Code Ann. § 36-4-121(a)(1); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).  Separate property is not part of the marital estate subject to division.  *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995).  Accordingly, when it comes to dividing a divorcing couple's property, the court should initially identify the separate property, if any, belonging to each party.  *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

The general rules for determining whether property is separate or marital are found in statute.  Tenn. Code Ann. §§ 36-4-121(b)(1) & -121(b)(2).  Of course, the courts must apply these rules to the specific facts of each case, and the determination of whether property is jointly or separately held depends upon the circumstances.  *Langford v. Langford*, 220 Tenn. 600, 421 S.W.2d 632, 634 (1967).  Whether an asset is separate property or marital property is a question of fact.  *Cutsinger*, 917 S.W.2d at 241; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).  Thus, a trial court's classification decisions are entitled to great weight on appeal.  *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996).  These decisions will be presumed to be correct unless the evidence preponderates otherwise, *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983), or unless they are based on an error of law.  *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989).

After classification of the parties' property as either marital or separate, the trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just."  Tenn. Code Ann. § 36-4-121(a)(1).  The court is to consider several factors in its distribution.  Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered).  The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault.  Tenn. Code Ann. § 36-4-121(a)(1).

The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. An equitable distribution is not necessarily an equal one. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). As part of its responsibility to divide the marital estate equitably, the trial court must determine the value of the property included. The value to be placed on an asset is a question of fact. *Kinard*, 986 S.W.2d at 231.

The fairness of a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn. Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997 ); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Wilson*, 929 S.W.2d at 372; *Brown*, 913 S.W.2d at 168.

The parties herein agreed that the only real property subject to division was the marital home and agreed it had a value of $260,000 with a mortgage of $130,000. Wife was awarded the residence and the mortgage obligation. The effect is that Wife was awarded the equity in the home of about $130,000.

Most of Husband's argument questions the classification of portions of accounts and investments. Essentially, he points out contradictory testimony regarding when the accounts were established and how much was contributed to or gained by them during the marriage as opposed to prior to the marriage. The trial court's order reflects that certain identified assets, which the court describes as Husband's separate property, were assigned a "marriage value," a value for appreciation during the marriage, a current total value, and an equity value. All these assets were awarded to Husband. It appears to us that the trial court recognized the distinction between separately-owned property and the increase in value to such property during the marriage and attempted to assign values accordingly. To the extent Husband argues that there is evidence to support a different calculation as to the increase in value occurring during the marriage, or whether marital funds were used to acquire or contribute to the accounts, the evidence does not preponderate against the trial court's determinations.

Husband's argument on appeal consists of pointing out specific disputes regarding when specific assets were acquired, asserting that the couple's only non-mortgage debt ($900) should have

been equitably divided,[10] and mentioning Wife's testimony that her checking account contained only $1,000, when it had contained $17,000 six months earlier, and the trial court's assignment of a value of $1,000 to that account.[11]

Husband makes no argument that the division of property was inequitable; instead his complaint is with the trial court's determination of the size of the marital estate. It appears to us that the trial court essentially awarded each party those assets which would be considered separate along with any marital property reflected in the increase in value of those assets during the marriage. The primary exception to this general statement was the marital residence. Wife was awarded all of the equity. The only liquid assets awarded to Wife were her retirement account and her checking account.

In equitably distributing marital property, courts are guided by a number of factors, including the duration of the marriage, the estate of each party at the time of the marriage, and the contributions of each spouse to the acquisition, preservation, appreciation or dissipation of the marital or separate property. Tenn. Code Ann. § 36-4-121(c). The court is specifically authorized to weigh "such other factors as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-4-121(c)(11).

The facts of this case require us to consider the principle established in *Batson v. Batson*, that in marriages of short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859 (citations omitted). In such marriages, an important factor to consider is each spouse's contribution to the accumulation of assets during the marriage. *Id.* The significance and value of a spouse's non-monetary contributions diminishes when the duration of a marriage is short and "claims by one spouse to another spouse's separate property are minimal at best." *Id.* These principles have been applied in a number of cases since *Batson*. *See, e.g., Barnhill*, 826 S.W.2d at 449 (determining that especially in marriages of short duration, an equitable division of marital property need not be an equal one).

In addition, the property a spouse receives as part of the distribution of the marital estate upon divorce is an important factor in determining the need for, nature, and amount of spousal support. It is one of the statutory factors which courts are to consider in making spousal support decisions. Tenn. Code Ann. § 36-5-101(d)(1)(H). Both property division and support awards can be used to address the needs of an economically disadvantaged spouse.

Our Supreme Court has explained the relationship between spousal support and the distribution of marital property when one spouse is economically disadvantaged.

---

[10]Husband's brief asserts the debt was assigned to him, but the order reflects it was assigned to Wife.

[11]However, Husband assigned that account a value of $1,000 in his proposal for division of property.

-15-

All relevant factors, including those set out in § 36-5-101(d)(1), must be considered on a case-by-case basis to determine the nature and extent of support. Tenn. Code Ann. § 36-5-101(d)(1). Factor (H) requires the trial court to consider the division of marital property when awarding alimony. Tenn. Code Ann. § 36-5-101(d)(1)(H). The division of marital property involves the distribution of both marital assets and marital debts. *See Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). We encourage trial courts to use the division of marital property to assist in meeting the disadvantaged spouse's financial needs when feasible. *See Crabtree*, 16 S.W.3d at 361 n.4 ("In cases in which there is a disparity between the relative earning capacities of the parties, a trial court also may consider adjusting the award of marital assets to assist the disadvantaged spouse."); *see also Renfro v. Renfro*, 848 P.2d 830, 834 (Alaska 1993) (establishing a preference for meeting the parties' needs with the division of marital property, rather than with alimony). Section 36-4-121 of the Tennessee Code Annotated does not require an equal division of marital property but an equitable division. Tenn. Code Ann. § 36-4-121(a)(1); *see Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988). When practical, therefore, a trial court should consider awarding more assets to an economically disadvantaged spouse to provide future support, rather than relying solely upon an award of alimony. When there are few marital assets but a considerable amount of marital debt, a trial court should similarly consider awarding a disadvantaged spouse a lesser amount of marital debt. Careful distribution of the marital property may assist the disadvantaged spouse in achieving rehabilitation in furtherance of the legislative policy of eliminating spousal dependency.

*Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

We affirm the trial court's division of marital property.

### B. Spousal Support

The court determined that Wife needed at least $4,100 per month and ordered that Husband pay Wife alimony of $2,333 per month until her death or remarriage. The court found, "There is such relative economic disadvantage between the parties, and Plaintiff's rehabilitation is not feasible." Husband was also required to maintain consistent health insurance coverage for the benefit of Wife. Wife was awarded her attorney's fees in the amount of $11,000.

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to public policies reflected in applicable statutes. *Bogan*, 60 S.W.3d at 733; *Kinard*, 986 S.W.2d at 234; *Brown*, 913 S.W.2d at 169. Our role is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable. *Bogan*, 60 S.W.3d at 733. When the trial court has set forth its factual

findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 733; *Crabtree*, 16 S.W.3d at 360.

Alimony or spousal support is authorized by statute, Tenn. Code Ann. § 36-5-101(a)(1), which gives courts discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ." There are no hard and fast rules for spousal support decisions, and such determinations require a "careful balancing" of the relevant factors. *Anderton*, 988 S.W.2d at 682-83. In determining whether to award support and the nature, amount and length of such support, the court is to consider all relevant factors, including those enumerated in Tenn. Code Ann. § 36-5-101(d)(1).[12]

---

[12]The factors the court must consider making an alimony decision are:

(A) The relative earning capacity, obligations, needs and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case, and the court must weigh and balance all relevant factors. *Robertson*, 76 S.W.3d at 338; *Watters*, 22 S.W.3d at 821. Among these factors, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Bogan*, 60 S.W.3d at 730; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors, the disadvantaged spouse's need is the threshold consideration.

> While there is no absolute formula for determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support."

*Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50) (Tenn. Ct. App. 1989)).

Among the statutory factors to be considered in deciding whether to award alimony are: the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the ability and opportunity and necessity of each party to secure such education and training in order to improve such party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the divorce. Tenn. Code Ann. § 36-5-101(d)(1). Relative economic disadvantage incorporates the principles of need and ability to pay.

Where such disadvantage exists, the legislature has expressed a preference for rehabilitative alimony over long-term, open-ended alimony *in futuro*. Tenn. Code Ann. § 36-5-101(d)(1); *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 470; *Crabtree*, 16 S.W.3d at 358. The purpose of an award of rehabilitative alimony is to encourage divorced spouses to become self-sufficient. *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 471, *Crabtree*, 16 S.W.3d at 360. The purpose of alimony *in futuro* is to provide financial support to a spouse who cannot be rehabilitated. *Burlew*, 40 S.W.3d at 470-71.

Rehabilitative alimony is appropriate where the spouse is economically disadvantaged, but where rehabilitation is possible by the grant of "rehabilitative, temporary support and maintenance." Tenn. Code Ann. § 36-5-101(d)(1). Our Supreme Court has discussed the purposes behind alimony, stating:

> The prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony. The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage. However, rehabilitative alimony may assist the disadvantaged spouse in

obtaining further education or training. It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Robertson*, 76 S.W.3d at 340-41.

In determining whether a disadvantaged spouse can be rehabilitated with short-term support, the court is to consider "every relevant factor." *Id.* Neither the standard of living the parties enjoyed during the marriage nor the income or earning potential of the other spouse can be used as the sole or determinative factor. *Id.*; *Crabtree*, 16 S.W.3d at 359.

This was the second marriage for both parties, and Wife was approximately 38 years old at the time of the marriage, and Husband was 49. Both are high school graduates. Both had been employed throughout the marriage. Wife had been employed at Teldata Corporation since June 1992 and was a coordinator for a major account. Her income had grown from $21,470 in 1993 to $31,172 in 1999. Husband was employed by Automation Tool Company during part of the marriage and, at the time of the hearing, was employed by Improtech in Michigan making an annual salary of $120,000 with bonus possibilities. Husband's income had grown from $62,976 in 1993 to $136,266 in 1999.

The trial court herein found that rehabilitation of Wife was not feasible, but did not elaborate on the reasons for that finding. Although Wife's employment income is much less than Husband's,[13] that difference in and of itself is not sufficient to support a conclusion that she is not capable of becoming self-sufficient. *Crabtree*, 16 S.W.3d at 360. Wife also suffers from a number of health problems or medical conditions.[14] However, there was no testimony that these conditions prevented her from continuing employment. Based upon our Supreme Court's instructions on how we are to determine whether rehabilitation is feasible, we cannot conclude that Wife is not capable of reaching self-sufficiency.

Based upon the facts of this case, we conclude that rehabilitative alimony for a reasonable period would allow Wife to make the economic adjustment accompanying divorce. Consequently, we modify the award of alimony *in futuro* to an award of rehabilitative alimony.

The parties lived together for five years, and lived separately for three years prior to the trial court's order which we have modified to declare them divorced. For two years from the parties' separation in December of 1997, Husband paid Wife $1,500 per month, her car note of $555 per month and car insurance at $150 per month. In November of 1999, the voluntarily-paid $1,500 was

---

[13] We note that this disparity existed when they married, and Husband's greater age implies a longer employment history prior to marriage, but a shorter expectancy of continued employment.

[14] Wife testified that she suffers from psoriasis, herpes, chlamydia, vaginosis, mild Crohn's disease, ovarian cysts, breast cysts, two blocked arteries, high blood pressure and cholesterol, and depression. As a result of her various medical conditions, Wife takes approximately 10-12 different prescription medications per day.

increased by agreed order to $1,900 per month, and he continued to also pay the car note and the car insurance for a total monthly payment of $2,600 per month.

As part of the property division, Wife was awarded the equity in the marital residence, which was valued at $130,000. Husband has provided *pendente lite* support and support after the decree which has allowed Wife to continue mortgage payments, increasing the equity. The trial court found that Wife needed $4,100 per month. That figure comes from Wife's statement of estimated expenses. That statement includes the $555 monthly car payment, which Husband has been paying since 1997.

We conclude that Wife should be awarded rehabilitative alimony in the amount of $2,333 per month for thirty-six months from the trial court's order,[15] and in the amount of $1,500 per month for the twenty-four months following thereafter. The trial court's judgment is modified accordingly.

## C. Attorney's Fees

An award of attorney's fees in divorce cases is considered alimony or spousal support, generally characterized as alimony *in solido*. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Kinard*, 986 S.W.2d at 235-36; *Smith*, 984 S.W.2d at 610; *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Smith v. Smith*, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Cranford*, 772 S.W.2d at 52, *overruled on other grounds by Bogan*, 60 S.W.3d at 730; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988).

Because attorney's fees are considered alimony or spousal support, an award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. *Yount*, 91 S.W.3d at 783; *Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997). Therefore, the statutory factors listed in Tenn. Code Ann. § 36-5-101(d)(1) are to be considered in a determination of whether to award attorney's fees. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2000); *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

As with other forms of spousal support, the need of the spouse requesting the award of attorney's fees is the single most important factor. *Miller*, 81 S.W.3d at 775; *Watters*, 22 S.W.3d at 821. The obligor spouse's ability to pay is also an important consideration. *Miller*, 81 S.W.3d at 775; *Hazard v. Hazard*, 833 S.W.2d 911, 917 (Tenn. Ct. App. 1991). Courts have held that in determining whether to award attorney's fees as spousal support, the most important factors are the real need of the disadvantaged spouse, a demonstrated financial inability to obtain counsel, and the ability of the obligor spouse to pay. *Wilder*, 66 S.W.3d at 895; *Cranford*, 772 S.W.2d at 50. In a recent opinion, the Supreme Court stated that an award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith . . ." and that such an award is to ensure

---

[15]Through December of 2003.

access to the courts. *Langschmidt*, 81 S.W.3d at 751 (quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)). Consequently, a spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. *Lindsey*, 976 S.W.2d at 181; *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Houghland v. Houghland*, 844 S.W.2d 619, 623-24 (Tenn. Ct. App. 1992); *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984).

An award of attorney's fees as alimony is considered to be within the sound discretion of the trial court, *Loyd v. Loyd*, 860 S.W.2d 409, 413 (Tenn. Ct. App. 1993); *Wallace*, 733 S.W.2d at 110-11, and such an award will not be reversed on appeal if the trial court acted within its discretion. *Yount*, 91 S.W.3d at 783; *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988). The Tennessee Supreme Court has made it clear that "[t]he allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron*, 909 S.W.2d at 411 (citing S*torey*, 835 S.W.2d at 597 and *Crouch v. Crouch*, 53 Tenn. App. 594, 606, 385 S.W.2d 288, 293 1964)).

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Based upon the record before us, including the liquid assets awarded to Wife and Husband's initial denial of adultery, we find that the trial court acted within its discretion in awarding Wife her attorney's fees as alimony *in solido* and affirm the trial court's award.

## V. Conclusion

We reverse the trial court's dismissal of Mr. Edmisten's counter-complaint for divorce based upon two years' separation and modify the court's final order to declare the parties divorced. We affirm the division of marital property and the award of attorney's fees to Wife. We modify the award of alimony and modify the trial court's order to grant Wife rehabilitative alimony for sixty months in the amount of $2,333 per month for the first thirty-six months and $1,500 per month for the twenty-four months thereafter. The case is remanded for any further proceedings that may be necessary, consistent with this opinion. Costs of this appeal are taxed equally between the parties.

_____
PATRICIA J. COTTRELL, JUDGE