IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2013 Session

## WILLIAM DAVID RUSSELL v. MARY BETH RUSSELL

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI110000368      Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2012-02156-COA-R3-CV - Filed November 27, 2013**

_____

In this action, the trial court granted Wife a divorce on fault-based grounds against Husband and awarded $1,500.00 monthly in transitional alimony to Wife for a period of thirty-six months. Husband appeals. Determining the amount of alimony to be beyond Husband's ability to pay, we modify the transitional alimony award to $1,000.00 monthly to Wife for thirty-six months. We affirm the judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part and Modified in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Christopher J. Pittman, Clarksville, Tennessee, for the appellant, William David Russell.

Mark R. Olson, Clarksville, Tennessee, for the appellee, Mary Beth Russell.

**OPINION**

I. Factual and Procedural Background

The parties were married on June 12, 2004, and have two minor children who were four years old and fifteen months old, respectively, at the time of trial. The parties separated on July 22, 2011, approximately six weeks after the youngest child's birth. Husband filed a complaint for divorce on August 26, 2011, alleging irreconcilable differences and inappropriate marital conduct. Wife filed an answer and counterclaim on September 30, 2011, alleging adultery and inappropriate marital conduct.

At the time of trial, Husband had worked full-time at his family's business, Orgain Building Supply ("Orgain"), for approximately eight years. He earned an annual salary of $49,798.00 plus a variable yearly bonus, which in 2011 was $30,000.00. This afforded him an aggregate income of $79,798.00 from Orgain in 2011, the year he filed the complaint for divorce.

Beginning in August 2005, Wife was employed at Farmers and Merchants Bank ("F & M") as an investment sales associate. She left that position in 2008 to stay at home when the first child was born, but she returned to work for F & M after the parties separated. While expecting her first child, Mother had been studying to become licensed as an investment counselor, but she did not complete the licensing process. Her annual salary at F & M at the time of trial was $35,000.00. Wife also worked part-time managing an event center and was co-owner of a catering business. She testified that at the time of trial, she had earned $1,500.00 in the first nine months of 2012 at the event center and that from the catering business, she had taken one "draw" of $532.99.

Prior to trial, the parties reached a partial settlement in mediation. On May 24, 2012, the trial court entered an agreed order, reserving specific contested issues for trial, including alimony and child support. Following a bench trial held on September 11, 2012, the trial court dismissed Husband's complaint for divorce and granted Wife a divorce on the grounds of adultery and inappropriate marital conduct. On the issues relevant to this appeal, the trial court found Husband's annual income to be $79,798.00 and Wife's yearly income to be $37,543.20. The court ordered Husband to pay $1,500.00 monthly in transitional alimony to Wife for thirty-six months and $1,346.00 monthly in child support. Husband timely appealed.

## II. Issues Presented

Husband presents one issue on appeal, which we restate as follows:

1.      Whether the trial court erred by ordering Husband to pay transitional alimony of $1,500.00 monthly for thirty-six months in light of the parties' respective incomes and the terms of the partial settlement.

Wife presents four additional issues, which we restate as follows:

2.      Whether the trial court erred by incorrectly calculating Husband's income and thereby awarding an amount of transitional alimony below Wife's level of need.

3.      Whether the trial court erred by awarding an inadequate amount of child support based on an incorrect calculation of Husband's income.

4.      Whether Husband's appeal should be dismissed based on the doctrine of unclean hands and his testimony disregarded as not credible.

5.      Whether this Court should grant Wife an award of attorney's fees on appeal.

## III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against the trial court's findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are not afforded the same deference. *Id.*

Determinations regarding spousal and child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Transitional Alimony

Husband contends that the trial court erred by awarding Wife $1,500.00 in monthly transitional alimony for a term of thirty-six months because the amount is beyond his ability to pay. Although Husband argues that Wife's claimed expenses may be inflated, the crux of his argument is that even if Wife needs every penny of alimony awarded to her, he is simply unable to reasonably pay his total expenses and the alimony ordered. Wife contends that Husband has the ability to pay more than the amount of alimony established by the trial court. She further posits that both the amount and duration of alimony should be increased respectively to $2,211.36 monthly for a period of six years to enable her to meet the expenses to which she attested at trial. Upon a thorough review of the record, we conclude that the trial court properly awarded Wife transitional alimony for three years, but we determine that

Husband's ability to pay necessitates a decrease in the amount awarded from $1,500.00 to $1,000.00 monthly.

Tennessee law recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (Supp. 2013); *Mayfield*, 395 S.W.3d at 115. Our statutory scheme indicates a legislative preference favoring the short-term types of spousal support, rehabilitative and transitional alimony, over the long-term types of support, alimony *in futuro* and alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Mayfield*, 395 S.W.3d at 115; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007). Transitional alimony, at issue in the case at bar, "is appropriate when a court finds that rehabilitation is not required but that the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of the divorce." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 109 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(d)(4), (g)(1); *Riggs*, 250 S.W.3d at 456 n.5). As our Supreme Court has recently explained:

> Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." [*Gonsewski*, 350 S.W.3d] at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life." *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010).
>
> Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

*Mayfield*, 395 S.W.3d at 115 (emphasis in original).

It is well settled that "trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Id.* at 114; *see also Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App.

2008). Tennessee Code Annotated § 36-5-121(i) (Supp. 2013) provides that when determining the nature and amount of an alimony award, the trial court should consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"Although each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457).

In the case at bar, the trial court ruled from the bench at the conclusion of trial, stating that it had carefully considered all twelve of the statutory factors and would award to Wife "transitional alimony for a period of 36 months in the amount of $1,500 per month." We note that in the Final Decree, the trial court did not expressly identify the award of alimony as "transitional," but the nature of the alimony award is not disputed by the parties. Pursuant to Tennessee Code Annotated § 36-5-121(g)(2), the trial court ordered in the Final Decree that the alimony award "shall not terminate except in the event of Mary Beth Russell's cohabitation with a boyfriend or in the event of the remarriage of Mary Beth Russell."

In its Final Decree, the court made the following specific factual findings regarding the parties' respective incomes and expenses:

[T]he Court finds that the wife has income of $3,128.60, on a monthly basis, and the husband has income of $6,649.83, on a monthly basis. The Court relied upon the Exhibit from Orgain Building Supply to establish this number. The Court finds that the health insurance expense for the minor children is $404.50 monthly and is currently paid by the Mother. The Mother shall maintain the health insurance for the minor children. Each party pays $520.00 in child care expenses which shall be credited appropriately.

A. Obligor Spouse's Income

Announcing its ruling from the bench, the trial court clarified that the total yearly income it found for Husband, based on his payroll records from Orgain in 2011, was $79,798.00. This amount included Husband's base salary of $49,798.00 and his 2011 bonus of $30,000.00. Husband does not dispute his 2011 income; he instead argues that his annual bonus is unavailable to pay alimony because it is earmarked to repay a $36,000.00 loan he obtained in order to meet his obligations under the partial divorce settlement entered before the trial. Husband further argues that the downward trend in the amount of his bonuses over the past few years is a result of a decline in the construction market, that the trend may well continue, and that he therefore cannot be sure of his bonus amount. Husband does not dispute the trial court's finding regarding Wife's income, although he maintains that Wife's

earning capacity in both her position at the bank and her catering business is likely to increase.

Regarding the calculation of Husband's income, Wife argues in her brief on appeal that the trial court erred by using the amount of Husband's 2011 bonus rather than averaging his bonus over the past three years. Wife posits that this three-year average would yield an annual bonus amount of $38,333.00,[1] raising the valuation of Husband's income to $88,131.00 with his base salary and the bonus combined. We note that while the record contains documentation of Husband's 2011 bonus of $30,000.00 and 2010 bonus of $35,350.00, the only evidence regarding the amount of Husband's 2009 bonus is his testimony acknowledging that he had earned bonuses of as much as $50,000.00 "in the past." Wife has cited this testimony in calculating the three-year average, although it is not clear from the record that $50,000.00 was the amount of the 2009 bonus specifically.

Wife also argues in her appellate brief that Husband regularly acquired income he did not claim on his income and expense statement or their joint tax returns. According to Wife, such revenue included gambling winnings and "cash incentives" above his salary paid by Orgain. Although the parties' bank statements from the years Wife stayed at home with the children demonstrate some deposited funds exceeding Husband's earnings, both parties' testimony also referenced assistance from their respective parents or grandparents on several occasions, as well as a large settlement from an insurance claim on the roof of their home. Husband denies receiving any income beyond that documented from his employment. Our review of the record reveals no evidence that preponderates against the trial court's disregard of alleged additional income. Moreover, Wife's counsel in oral argument before this Court conceded that Wife was willing to accept the trial court's calculation of Husband's income "for the sake of argument." We determine that the trial court properly calculated Husband's income.

## B. Dependent Spouse's Need

Regarding her need for spousal support, Wife claimed a deficit of $2,211.36 monthly beyond her earned income on her expense statement presented to the trial court. The trial court did not explicitly find either party's statement of expenses to be inflated. Testimony demonstrated that both parties had lived somewhat above their means while married and had taken steps since their separation to live more economically. Husband's allegations that Wife is a spendthrift simply are not supported by the record.

---

[1]In proposing this average bonus, Wife appears to have rounded the total of the three bonus amounts from $115,350.00 down to $115,000.00.

Conversely, the duration of three years for transitional alimony to Wife meets the purpose of short-term support "designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *See Mayfield*, 395 S.W.3d at 115 (quoting *Gonsewski*, 350 S.W.3d at 109). Wife's supervisor testified that Wife maintained an excellent record as an employee at the bank. Although he opined that Wife would have been earning more by the time of trial if she had not stayed home for a few years, caring for the children, he still expected her to advance in position and remain a valuable employee. Wife stated that she planned to leave her part-time work with the events center because it cost her more in expenses and time than she earned from the position. She acknowledged, however, that her catering business, while providing her with nominal income as of the date of trial, appeared to be flourishing and promised earning potential. Wife has the capacity for self-sufficiency and also the potential to increase her earning capability over time. We cannot conclude that the trial court abused its discretion in determining the level and duration of Wife's need for transitional alimony.

## C. Obligor Spouse's Ability to Pay

This brings our analysis to Husband's argument that he does not maintain the ability to pay alimony of $1,500.00 monthly. *See Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995) ("Need and the ability to pay are the critical factors in setting the amount of an alimony award."). At the 2011 level determined by the trial court, Husband's net income minus his support obligations is as follows:

| | |
|---|---|
| Husband's Net Monthly Income (base salary): | $2,902.88 |
| Husband's Net 2011 Bonus Prorated Monthly: | $1,858.75 |
| Net Income Subtotal: | $4,761.63 |
| | |
| minus | |
| | |
| Husband's Support Obligations: | |
| Alimony: | $1,500.00 |
| Child Support: | $1,346.00 |
| Child Care: | $ 520.00 |
| Obligations Subtotal: | $3,366.00 |
| | |
| Balance: | $1,395.63 |

At trial, Husband submitted an estimate of his monthly expenses as $6,116.00, which included $525.00[2] for his share of child care, an estimate of $911.00 for child support, and $1,500.00 he claimed was needed to repay a $36,000.00 loan acquired to satisfy his obligations under the parties' partial settlement. Husband's obligations under the partial settlement included $19,000.00 he had paid before trial to cover a portion of the second mortgage on the marital residence (awarded to Wife in the settlement), an $11,772.03 balance on a credit card used by both parties, a $4,500.00 payment toward Wife's attorney's fees, and a $1,000.00 to $2,000.00 balance on Wife's car note. Husband presented no documentation of a loan, however, beyond his own testimony. Wife testified that she believed Husband had paid his pre-trial settlement obligations with his 2011 bonus. Our calculations of Husband's expenses, therefore, do not include repayment of his claimed loan.

Without Husband's estimated support obligations and loan repayment (representing $2,936.00 of the expenses he estimated), his approximate monthly expenses total $3,180.00. Even considering that Husband may be able to trim his expenses, the $1,395.63 monthly balance remaining after his support obligations represents less than half of his expenses. Wife argues that Husband has no need of money for housing or utilities because at the time of trial, he lived with his grandmother and often stayed with his paramour. We must agree with Husband, however, that his living with extended family without contributing to housing and utilities for three years would not be reasonable or tenable.

Husband cites *Goodman v. Goodman* as analogous to the instant action. *See* 8 S.W.3d 289 (Tenn. Ct. App. 1999).[3] In *Goodman*, this Court reduced an award of alimony *in futuro* from $5,110.00 to $4,000.00 monthly after determining that the trial court erred in finding that Husband had the ability to pay the awarded sum. *Id.* at 296. In setting the higher alimony amount, the trial court in *Goodman* relied in part on the husband's potential to work extra hours, which he had never done, and on his purported ability to borrow money from his wealthy parents. *Id.* at 294-95 (stating that "as the trial court did not make a finding that Husband was underemployed, the trial court may not impute any additional income to Husband."). We do not find the facts in *Goodman* to be directly analogous, as the trial court in the instant action imputed no income to Husband beyond his full-time employment. As in *Goodman*, however, we determine that the amount of alimony established leaves Husband without the resources to pay rudimentary expenses. *See id.* at 294 (reducing the alimony

[2]Each party's share of child care under the final judgment is $520.00.

[3]*Goodman* was abrogated on an unrelated point of law regarding alimony *in solido* by revision of the statute governing alimony, now Tenn. Code Ann. § 36-5-121, as noted in *Andrews v. Andrews*, 344 S.W.3d 321, 344-45 (Tenn. Ct. App. 2010). *See Tippens-Florea v. Florea*, No. M2011-00408-COA-R3-CV, 2012 WL 1965593 (Tenn. Ct. App. May 31, 2012).

award by $1,110.00 monthly after determining that the award left the husband with only $562.00 each month after paying support obligations). More recently, our Supreme Court determined in *Gonsewski* that where the husband's yearly bonus was a variable amount that could likely decrease dependant upon economic factors outside his control, the unpredictability of his bonus should be factored into his ability to pay. *See* 350 S.W.3d at 111-13 (noting also that because "'[t]wo persons living separately incur more expenses than two persons living together,'" "it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded.'") (quoting *Kinard*, 986 S.W.2d at 234)).

Wife further argues that Husband's fault in choosing to engage in an extramarital affair and leave the marital home should not deprive Wife of the needed resources to maintain a home for herself and the children. In granting Wife the divorce on grounds of adultery and inappropriate marital conduct and dismissing Husband's complaint for divorce, the trial court clearly found Husband guilty of adultery and at fault for the dissolution of the marriage. The court also expressly listed the relative fault of the parties as one of the statutory factors it considered in setting alimony. While the parties' relative fault is a factor to be considered in determining the nature and amount of an alimony award, alimony "is not and never has been intended by our legislature to be punitive." *See Lindsey v. Lindsey*, 976 S.W.2d 175, 179-80 (Tenn. Ct. App. 1997) (quoting *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984)). We conclude that the trial court erred in setting the amount of transitional alimony beyond Husband's ability to pay and that a downward modification from $1,500.00 monthly to $1,000.00 monthly is appropriate and supported by the evidence in this case.

## V. Child Support

Based on Wife's assertion in her brief on appeal that the trial court should have averaged Husband's bonuses over the past three years in calculating his income, Wife posits that the trial court incorrectly set the monthly amount of child support to be paid by Husband. The trial court ordered Husband to pay $1,346.00 monthly in child support, which Wife does not dispute as the accurate amount pursuant to the trial court's findings regarding the parties' respective incomes and the Child Support Guidelines. *See* Tenn. Code Ann. § 36-5-101(e)(1) (2010). Having determined that the evidence does not preponderate against the trial court's finding regarding the amount of Husband's income, we conclude that this issue is pretermitted as moot.

## VI. Doctrine of Unclean Hands

Wife contends that Husband's appeal should be dismissed based on the equitable doctrine of unclean hands. She asserts that Husband spent money throughout the marriage on an "extensive gambling addiction," about which he invoked his Fifth Amendment right against self-incrimination at trial. As her argument goes, this Court should draw a negative inference based on his invocation of the Fifth Amendment. *See Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 506 (Tenn. 2012) (holding that "the trier of fact may draw a negative inference from a party's invocation of the Fifth Amendment privilege in a civil case only when there is independent evidence of the fact to which a party refuses to answer by invoking his or her Fifth Amendment privilege."). She further asserts that Husband misrepresented his income to the trial court and falsely testified that he did not become intimately involved with his paramour until after the parties separated. Husband contends that the trial court properly weighed Husband's credibility and determined Husband's income. We agree with Husband.

The doctrine of unclean hands is based on the principle that "He who seeks Equity must do Equity, and he who has done inequity shall not have Equity." *See Segelke v. Segelke*, 584 S.W.2d 211, 214 (Tenn. Ct. App. 1978). In support of her position, Wife relies on this Court's decision in *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990 (Tenn. Ct. App. May 13, 2003), which we find does not stand for the proposition Wife presents. In *Edmisten*, this Court reversed the trial court's finding of unclean hands on the husband's part, determining that the wife's ability to prove the husband's fault had not been hindered by the husband's perjury in answer to an interrogatory. *See id.* at *7 ("[T]he defense of unclean hands is subject to limitations; it must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint.") (citing *Nolen v. Witherspoon*, 187 S.W.2d 14, 16 (Tenn. 1945)). *See also Chastain v. Chastain*, 559 S.W.2d 933, 935 (Tenn. 1977) (holding that in the context of defenses to a divorce complaint, "except for fraud and deceit upon the court, which are always available as defenses in any court, the clean hands principle does not apply in divorce litigation.").

The trial court, as the trier of fact in the instant action, properly evaluated the credibility of the parties, including Husband's invocation of the Fifth Amendment right against self-incrimination in answer to questions regarding alleged gambling. *See Jones v. Garrett,* 92 S.W.3d at 838 (noting that the trial court's determinations regarding witness credibility shall not be disturbed absent clear and convincing evidence to the contrary). The court found in Wife's favor, granting a divorce on the fault-based grounds of Husband's adultery and inappropriate marital conduct. Wife did not raise the issue of unclean hands in the trial court and now seeks to have this Court dismiss Husband's appeal as of right from

a final judgment based on her allegations. *See* Tenn. R. App. P. 3(a). We conclude that the doctrine of unclean hands is not applicable to this appeal.

## VII. Attorney's Fees on Appeal

Wife contends that she should be awarded attorney's fees on appeal. The decision of whether to award attorney's fees on appeal in a case involving custody and support is within the discretion of the appellate court. *See Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). This Court has awarded attorney's fees for the defense of an appeal in a divorce action based on the same equitable principles that would allow for an award of attorney's fees at the trial court level, particularly that the dependent spouse is without a source of funds from the divorce judgment with which to defend the appeal and that the other spouse has the ability to pay. *See, e.g., Tippens-Florea v. Florea*, No. M2011-00408-COA-R3-CV, 2012 WL 1965593 (Tenn. Ct. App. May 31, 2012). In the instant action, however, as in *Archer*, "neither party appears to be able to afford [his or her] own attorney's fees." *See Archer*, 907 S.W.2d at 419. Given the results of this appeal and the respective financial situations of the parties, Wife's request for an award of attorney's fees on appeal is denied.

## VIII. Conclusion

The trial court's award of transitional alimony to Wife is modified from $1,500.00 monthly for thirty-six months to $1,000.00 monthly for thirty-six months. The trial court's judgment is affirmed in all other aspects. This case is remanded to the trial court, pursuant to applicable law, for modification and enforcement of the trial court's judgment. Wife's request for an award of attorney's fees on appeal is denied. Costs on appeal are assessed equally to both parties.

_____
THOMAS R. FRIERSON, II, JUDGE